## No. 255.

THE STATE EX REL. WOODRUFF ET AL. vs. E. S. DORTCH, PRESIDENT POLICE JURY OF BOSSIER PARISH ET AL.

1. In the absence of special statutory authorization, courts are without jurisdiction *ratione materiæ* to entertain cases of contested election.

2. The foregoing rule applies as well to elections held to determine the location of a parish seat as to elections of officers.

3. No statute invests the courts of this State with jurisdiction over contested elections to determine the parish seat.

State ex rel. Woodruff et al. vs. Police Jury et al.

A PPEAL from the Second District Court, Parish of Bossier.
*Boone*, J.

*Alexander & Blanchard, Land & Land* and *Joannes Smith* for Plaintiffs and Appellants:

1. Plaintiffs having a direct pecuniary interest in the result of the election held November 23, 1888, relative to removal of parish seat of Bossier parish, have a right of action. C. P. Art. 15.

2. Article 11 of the Constitution of 1879 guarantees adequate remedy in the courts for all legal rights. The right to vote and to have elections held according to law is too precious to be estimated in dollars and cents, and such right entitles the citizen to a remedy in the courts of the State. 35 Ann. 637.

3. While none but a candidate can contest the right to an office, and while, perhaps, courts will not entertain a contest for office unless provided for by statute, these rules do not apply to local elections on matters of local concern, involving no title to office, such as a local assessment or the question of removal of a courthouse. 12 Ann. 841; 32 Ann. 1013; Paine on Elections, Sec. 949.

4. Allegations that in a certain precinct there were 450 legal votes and there was actually cast, counted and returned 2820 ballots, are sufficiently specific to throw out the whole poll; McCrary on Elections, Sec. 548.

5. Time for filing suit contesting an election extended to thirty days after the official promulgation of the result. Act No. 24, 1877.

*Watkins & Watkins* and *Young & Thatcher* for Defendants and Appellees:

The Supreme Court is without jurisdiction *ratione materiæ* where the petition sets forth no actual pecuniary interest in plaintiffs, of over $2000 in the matter in dispute. Const. Amend., Art. 81. 26 Ann. 673; 32 Ann. 1135; 33 Ann. 110; 21 Ann. 743; 34 Ann. 834; 28 Ann. 342.

The mere allegation that plaintiffs are taxpayers and citizens, is not sufficient to show an appealable interest in the suit. 27 Ann. 446; 1 Wood, U. S. Circuit Reports, 124.

Act 24 of 1877, purporting to amend and re-enact Section 1421 R. S., does not repeal the section *in toto*, but the prescription of ten days continued in the original section remains applicable to all contests of election not changed to thirty days by the amendment. 12 Ann. 432, C. C.

In the absence of statutory authorization, the courts are without jurisdiction *ratione materiæ* to entertain the case of a contested election. 13 Ann. 89; 25 Ann. 263; 25 Ann. 267; 28 Ann. 698; 31 Ann. 122; 10 Ann. 670.

The opinion of the Court was delivered by

FENNER, J.  Under Section 5 of Act 33 of 1888 (which act has been fully analyzed and interpreted in our opinion rendered at this term in the case of Mobley et al. vs. Police Jury) an election was held, on November 23, 1888, to determine whether the town of Haughton or the town of Benton should become the parish seat of Bossier parish.

Section 6 of the act provided that the commissioners, to hold such election, should be appointed by the police jury, and should make their returns to said jury, and it was made the duty of the said jury to proclaim the result of the election within five days after holding the same, and it was also made the duty of the president of the police jury to declare the place, so found to have received a majority of votes, to be the parish seat of Bossier parish.

The election has been held; the commissioners have made their returns to the police jury, and other proceedings have been had, culminating in a declaration by the president of the police jury that the town of Haughton has received a majority of votes and is the parish seat.

The present action is brought by a number of citizens and taxpayers residing in and near the town of Benton, who aver that each of them holds property which will be increased in value to an amount exceeding $2000 in case the parish seat be established at said town. They allege that Benton received a large majority of the votes cast at the election; that the commissioners of elections at certain polling places stuffed the ballot boxes and made false and fraudulent returns; and that, upon a proper purging of said fraudulent votes and returns, the town of Benton will be found to have been legally chosen as the parish seat and entitled to be so declared.

Their action is brought against the town of Haughton and the president and members of the police jury, and they pray for "judgment decreeing that the town of Benton received a majority of the legal votes cast at said election on November 23, 1888, and in the parish seat of Bossier parish, and further decreeing that said police jury proclaim the result of said election, and said president declare the town of Benton to be the parish seat of Bossier parish, pursuant to said judgment; and they further pray that the court examine the facts and decide them according to the law and equity of the case; and for general relief, etc."

We have quoted this prayer in extenso for the purpose of exhibiting unmistakably the scope and character of the relief sought, which requires the court to go behind the returns of the commissioners of election; to recount the votes; to hear evidence and cast out such votes as it finds to be illegal or to exclude entirely returns which it finds to be false; to tabulate the returns as expurgated by the court; to ascertain and declare the return of the election; and to compel the police jury and its president to make proclamation in accordance with the judgment.

Several exceptions were filed by defendants, of which one lies at the threshold of the proceeding and must be primarily determined.

This is the exception that the issue presented is not one of judicial cognizance, and that, in the absence of statutory authorization, courts are without jurisdiction *ratione materiæ* to entertain a contest of an election.

It is admitted that there is no statutory authority authorizing the courts of this State to entertain jurisdiction of a contest of such an election as the one here concerned. The Legislature has provided for judicial security of elections in certain cases, and the provisions are found in the Revised Statutes, Sections 1417 to 1435. A reference to them will show that they refer exclusively to elections for office and for certain designated offices. They contain nothing which, by any stretch of construction, could be held to cover an election of the character here involved.

As long ago as 1858, this court emphatically laid down the doctrine on this subject in the following language :

" The contesting of votes is not a judicial function, only so far as made such by special statutes. Indeed, some have gone so far as to question whether this is not wholly a matter of administration which cannot with propriety be referred to the judicial tribunals at all. At any rate, it is clear that such tribunals cannot usurp any greater control over this business than is specially imposed on them by law. In the absence of a statutory authorization, they are without jurisdiction of the matter *ratione materiæ.* The consent of parties cannot give jurisdiction, and all courts, before whom such an unauthorized controversy is brought, must decline, *ex officio,* to render any order which would recog nize a right to sustain the case." State vs. Judge, 13 Ann. 89.

During the lapse of more than thirty years since that decision was rendered there has never been a judicial utterance from this court controverting its correctness.

It was expressly affirmed in several cases during the Returning Board *régime,* the decisions in which operated great injustice and excited severe criticism; but it is significant that the opposition to those decisions was based on no contradiction of the doctrine of the 13th Annual case. A reference to the able dissenting opinion of Judge Wylie will show that his dissent was based on the ground that the intrusion into office act, under which those suits were brought, did supply express statutory authority for the jurisdiction invoked. Bonner vs. Lynch, 25 Ann. 267; State ex rel. Moncure vs. Dubuclet, 28 Ann. 698.

The present suit is not, and could not have been, brought under the intrusion into office act.

Courts of common law undoubtedly claim an inherent right to entertain jurisdiction over contested elections under proceedings in the nature of a *quo warranto*; but referring to the provisions of our Code of Practice on that writ, it will be seen that they confine that remedy to " disputes between parties in relation to offices in corporations," and expressly declare that " with regard to offices of a public nature, that is, which are conferred in the name of the State by the Governor, or by election, the usurpations of them are prevented and punished by special laws." C. P. Art. 868.

This common law jurisdiction is, therefore, expressly excluded by our statute.

It seems well settled that, in absence of express statutory authority, courts of equity will not exercise such jurisdiction.

We feel bound, therefore, to adhere to the jurisprudence of the State maintaining the doctrine of the 13th Annual case. It is ancient; and it has been, at all times, within the power of the Legislature to extend to the courts the jurisdiction which they had declined. The fact that the Legislature has not done so, or has extended only a jurisdiction defined and limited, clearly conveys the intention of that department to exclude the courts from any jurisdiction in such matters beyond that expressly granted. Indeed, the assumption of such jurisdiction, in absence of any legislative regulations of method, time and order of procedure, would be fraught with serious consequences.

Reference to the statutes regulating judicial contests of elections, will show the care with which the Legislature has regulated the time and method of proceeding, securing the utmost promptness and rapidity of action and determination. But if such jurisdiction can be exercised in cases not covered by these statutes, these regulations would have no application. The suits would be governed only by the principles of the general law. There seems no reason why the dissatisfied elector might not bring his action at any time within the term of prescription, and why he might not lie quiet until the parish government had been fully established at the new seat, and even a courthouse built, and then spring his action to upset the election.

It is vain to quote Article 11 of the Constitution of 1879, which guarantees " adequate remedy by due process of law " for all legal rights. A like article existed in the Constitution prevailing when this jurisprudence was established.

Equally vain is the reliance placed on the language of Article 250, re-

quiring that changes of parish seats shall " be adopted by a majority of votes cast at said election." A like requirement is clearly implied in every election ordained by the Constitution, viz: That the officer shall be chosen by a majority of votes over any other candidate; and if this does not authorize judicial inquiry into the question of majority *vel non*, without statutory authority, in the case of an officer, why should it in the case of the parish seat?

There is no possible reason or consideration for applying a different rule to elections for parish seats from that applied to elections for officers. Both are matters of purely governmental concern, involving only public and popular rights and conferring no private rights which are susceptible of becoming vested.

The Legislature was charged with the function of ordering this election and regulating the mode in which the votes should be cast and returned and the result ascertained and proclaimed. It has exercised this function and it has not seen fit to authorize any appeal to the courts. If the criminal acts charged in this petition have been committed, and the voice of the people has been falsified, it lies in the power of the Legislature, at its very next session, to pass an act removing the parish seat to Benton, and submit such act to the voters of the parish, and no private rights would be legally injured.

We, by no means, disclaim control over officers, charged with specific duties of a ministerial character in connection with elections, to compel them to discharge such duties. This jurisdiction we have claimed and exercised. State ex rel. Patton vs. Judge, 40 Ann. 393; State ex rel. Mayor vs. Judge, 35 Ann. 639.

In the first quoted case we referred to and approved the doctrine of the 13th Annual, saying: " It is true it has been held by this court that, in the absence of special statutory authorization, courts are without jurisdiction, *ratione materiæ*, to entertain cases of contested election. This is a rule widely recognized and generally prevalent, and resting on peculiar principles; but it has never been extended so far as to exempt officers charged with the conduct of elections and with the ascertainment and promulgation of the results thereof from judicial control to require them to perform the specific duties imposed upon them by law."

The court is not asked in this case to compel officers to discharge ministerial duties; it was asked to take from them duties involving discretion, to discharge those duties itself, and to compel them to make formal declaration of its edict.

The judge *a quo* did not err in declining such jurisdiction.

Judgment affirmed.