ROGERS, J.
This is a suit contesting the nomination of Harney E. Brunot by the Democratic party, at a primary election held on March 27, 1923, to the office of Associate Justice of the Supreme Court of Louisiana, from the Fifth Supreme Court district. The suit was instituted by Columbus Reid. Robert S. Ellis intervened, setting up an interest in opposition to the claims of both plaintiff and defendant.
Defendant excepted to both the petition and the intervention on the following grounds: (1) No right or cause of action; (2) want of interest; and (3) that the court was without jurisdiction ratione materia. Defendant, further, moved to strike out the intervention alleging that the intervener had no right or standing to appear in the cause' or to proceed by way of intervention.
The district court maintained all of the exceptions and the motion to strike out the. intervention, and, accordingly, dismissed plaintiff’s suit and the petition of intervention. Plaintiff and intervener have appealed.
Both the petition and the petition of intervention show that, according to the returns of said primary election, as tabulated and promulgated by the Secretary of State, defendant, Brunot, received 9,472 votes, plaintiff, Reid, received 4,681 votes and intervener, Ellis, received 4,382 votes, or a majority of 409 votes for Brunot over the combined vote of his two opponents, and a plurality of 299 votes for Reid over Ellis.
Plaintiff attacks the returns of precinct 1 of ward 1 of the parish of East Baton Rouge and of precinct 1 of ward 1 of the parish of St. Landry. He seeks to have the entire election in the Baton Rouge precinct set aside and annulled, upon the ground of illegality and fraud, the specific acts of which are set forth in his petition, and to have the ballots cast at the St. Landry precinct for Brunot declared void and rejected because of the illegal manner in which said ballots were voted.
Intervener assails, as illegal, the entire vote in 13 precincts of the parish of St. Landry, and asks to have said votes annulled and rejected.
Plaintiff contends that, if the entire vote cast in the two precincts of which he complains be annulled and disregarded, the said defendant failed of a majority of the votes cast at said primary, thereby necessitating a second primary between himself and defend *493 ant in order to determine the nominee for the office contested for in said primary.
Intervener contends that, if all of the votes in the parish of St. Landry attacked by him be deducted from the returns, defendant will have less than a majority of the total votes cast in the remaining precincts of the district, and that he will have a plurality over the plaintiff of the other votes cast in the district, and that, therefore, a second primary is necessary to select the nominee of the party as between the defendant and himself.
It is to be observed that neither plaintiff nor intervener claims to be, or asks to be declared, the party nominee by reason of said primary or prays that the election be declared null and void and set aside. The relief sought by each is that a second primary be ordered by the court. Plaintiff contends, however, that this primary should be between himself and defendant, Brunot; while intervener contends, on the contrary, that he should be the opponent of defendant, Brunot, in the primary.
The first question to be determined is as to the source and extent of the courts’ jurisdiction and power over the parties and subject-matter of this controversy.
 It is a well-settled and established principle of law that all elections and all matters relating to or affecting the same, belong to the political department of the government and are, therefore, beyond the control of the judicial power, in the absence of special constitutional or statutory authorization. No person has a right to invoke the aid of the courts in an election contest, unless there be some express law vesting the courts with jurisdiction and conferring such right of action upon the contestant.
“The right to contest an election is not a natural right but exists, if at all, in the Constitution or statutes.” 20 C. J. .222.
In State v. Judge, 13 La. Ann. 89, this court said:
“The contesting of votes is not a judicial function, only so far as made such by special statutes. Indeed, some may have gone so far as to question whether it is not wholly a matter of administration which cannot with propriety be referred to the judicial tribunals at all. At any rate it is clear that such tribunals cannot usurp any greater control over this business than is specially imposed upon them by law. In the absence of a statutory "authorization, they are without jurisdiction of the matter, ratione materise.”
During the lapse of more than 60 years since that decision was rendered, this court has never questioned its correctness. On the contrary, it has been expressly affirmed in many cases. It was cited with approval in State v. Police Jury, 41 La. Ann. 846, 6 South. 777, and its doctrine was accepted and adopted in State v. Foster, 111 La. 1087, 36 South. 200 ; Darbonne v. Village of Oberlin, 121 La. 641, 46 South. 679 ; and Roussel v. Dornier, 129 La. 930, 57 South. 272, 41 L. R. A. (N. S.) 557.
It is argued on behalf of appellants, however, that whatever may be said about the contesting of elections and of votes being a political question heretofore, the people of the state of Louisiana in constitutional convention, through their delegates, have made it a judicial question and that plenary power is now lodged in the courts to hear, try, and determine all contested election cases. In support of this contention, counsel cite article 8, § 4, of the Constitution of 1921, providing, among other things:
“The Legislature shall enact laws to secure fairness in party primary elections, conventions, or other methods of naming party candidates.”
And'section 12 of the same article, reading:
“The Legislature shall provide by law for the trial and determination of contested elections of all public officers, whether state, district, judicial, parochial, municipal or ward (except Governor and Lieutenant Governor), which trials shall be by the courts of law, and at the domicile of the party defendant.”
*495 Counsel also rely upon section 27 of Act No. 97 of 1922, enacted by tbe Legislature in pursuance of tbe constitutional mandate.
It is likewise urged that, under tbe constitutional grant to the courts to hear and determine the right to office or other civil and political, rights, the present controversy is cognizable by the judicial tribunals.
In so far as the last-mentioned contention is concerned, it is to be noted that section 35 of article 7 of the Constitution of 1921, conferring jurisdiction upon the courts, in cases where the right to office or other political position or civil or political rights are involved, is the same provision as was contained in article 109 of the Constitutions of 1893 and 1913.
In State v. Poster, cited supra, this court interpreted this provision as contained in the Constitution of 1898, holding that the grant of authority therein did not include the question of party nominations, “which must be determined by the party itself or by certain public officials as provided by statute.”
Section 27 of Act No. 97 of 1922 reads, in part, as follows:
“That in elections held under the provisions of this act all contests shall be made before the courts of the state, as herein prescribed, which are hereby fully vested with the necessary power, authority and jurisdiction to hear, try and determine the same. Any candidate for a nomination for any office who 'shall claim to have been nominated, and shall desire to contest the election, shall present a petition to the judge of the district court of the parish in which the capítol of the state is situated.” (Italics ours.)
It is to be observed that this section of the law confers jurisdiction upon the courts only of contests “as herein prescribed”; that is to say, contests made in the manner and by the persons thereinafter designated. It is to be further observed that the only person upon whom the statute confers the right of action is “any candidate * * * who shall claim to have been nominated.”
The language of the statute is plain and unambiguous, and would seem to admit of no qualification, modification, or amplification. Under its express terms the courts are powerless to act, unless the contestant is able to claim, with some substantial basis to rest on, that he has been nominated. In Andrews v. Blackman, 131 La. 355, 59 South. 769, the language of the court clearly infers that the courts have no jurisdiction in election cases, where no allegation is made in the petition that the petitioner claims to have been nominated.
It may be that it is not sacramental for the contestant to claim, in express language, that he has been' nominated, but it is certainly necessary that he set out a state of facts showing that, in fact and in law, he has a claim to the nomination. A demand to enter a second primary with a contestant receiving a larger number of votes is manifestly not a claim to the nomination.
' Counsel for appellants contend that the provisions of the statute (section 27 of Act No. 97 of 1922) should receive a broad and liberal interpretation, and that under such interpretation, sufficient authority is to be found in the law to authorize the courts to hear, try, and determine all election contests.
An examination of 'the election laws shows that the tendency of the lawmaker has been to restrict, rather than to enlarge, the right to engage in judicial contests over election results.
The primary election law of 1906 (section 25 of Act No. 49) granted the right of contest to “any candidate who should feel aggrieved at the result.” This provision was amended by Act No. 198 of 1912, so as to confer the right of contest only upon a candidate “who shall claim to have been nominated,” and the same provision was continued in Act No. 35 of 1916, § 25, and in the amendment thereof by Act No. 210 of 1920. It is now to be found in section 27 of Act No. 97 of 1922.
*497 In view of the lawmakers’ persistence in adhering to the provision permitting a contest to be made only by one “who shall claim to have been nominated” after they had adopted that restrictive policy in changing from the broader policy of permitting a contest to be entered by any person “who should feel aggrieved,” it can hardly be contended that the change of policy was instituted unthinkingly and without purpose.
Doubtless,- there were many reasons influencing the Legislature in its action. An obvious reason was the desire to eliminate the expense and annoyance of frivolous or futile contests by persons having merely a grievance with no substantial basis for such contest.
The contention of the appellants that the’ statute, in providing for the holding of a second primary where no contestant has received a clear majority of the votes cast, authorizes the inference that it sanctions a judicial controversy to determine whether, in the first place, there should be a second primary, and, in the second place, who should participate in that primary, cannot be sustained, in view of the express language of the statute limiting election contests only to such person as shall claim to have been nominated.
It may be that the Legislature, in enacting the law in question, never contemplated the possibility of a contest as to whether or not there should be a second primary and over the question as to who were to be participants in said primary, and therefore its failure to make provision to cover such a contingency was a pure omission or-oversight.
On the other hand, it is possible, and altogether probable, that the Legislature had in mind the exact point in question and deliberately, and after maturé consideration, withheld any right of action in the courts from a candidate seeking merely to enter a second primary, because of the uncertainty and confusion which might result from contests entered into and prosecuted by numerous candidates residing in different parishes, or for other causes or reasons addressing themselves to the sound discretion and judgment of the lawmaking body.
It is perfectly easy to suppose the case of a contest among numerous candidates arising in different parishes, involving a number of different suits between different parties and with different evidence, and a judgment in one suit not binding upon those not parties thereto, and the impossibility of this court being able to reach a conclusion, upon an appeal from the first judgment rendered, as to between whom the second primary should be held.
The object of legislation is not to fit some particular case; its purpose is to establish a general rule upon the subject-matter. In effecting this purpose, hardship may result in a particular case, nevertheless, the rule cannot be disregarded on this account, but must be adhered to in the interest of the whole public.
The function of the court is judicial and not legislative. It cannot make the law; it can only interpret and enforce it. It cannot disregard the express legislative enactment as embodied in the statute restricting the right to contest primary elections to the candidate who shall claim to have been nominated and extend and enlarge its terms so as to embrace a candidate who “may feel aggrieved” at the result of the election, or who may desire to contest it upon any grounds’ whatever, but not basing his right of action upon the claim of his nomination in said election.
Counsel for appellants contend that the court, under its equity powers, can afford them the relief prayed for. Courts are-only authorized to proceed and decide according to equity when there is no express law upon the subject. R. C. C. art. 21. There is no such case presented here. The law is not only ex *499 press on the subject of election contests, but in itself it contains the only authority by which the courts are empowered to hear, try, and determine such -contests. The Constitution, in express terms (section 12, art. 8), provides for the trial and determination of such causes “by the courts of law.” It does not say courts of law -and equity, and certainly the courts have no equitable jurisdiction, and they cannot, in the interest of what they may -conceive to be equity and fairness, extend the scope of the law beyond the meaning of its plain provisions.
Counsel for appellants cite the case of State v. Democratic Committee, 120 La. 620, 45 South. 526 ; State v. Michel, 121 La. 374, 46 South. 430 ; Maggiore v. Lochbaum, 139 La. 425, 71 South. 727 ; Hart v. Picou, 147 La. 1017, 86 South. 479 ; and Hall v. Godchaux, 149 La. 733, 90 South. 145.
' In the case of State v. Democratic Committee, this court held that the Democratic Committee was without jurisdiction to question the declaration of a candidate in a primary election that he was a “white democrat” ; that it \vas the plain ministerial duty of the committee to have the name of the applicant placed on the official ballot; and that the courts, were vested with jurisdiction to compel by mandamus the election officers to perform their ministerial duties.
In State v. Michel, a number of questions involving the primary laws were submitted and -adjudicated upon by the court, but nothing in that decision affects the issues presented in this suit.
In Hart v. Picou, the right of the contestant to institute the action was not questioned, and the court did not consider or discuss the effect of the provisions of the primary act conferring such right only upon a person who claimed to have been nominated. Furthermore, in that case no election whatever had been held.
The case of Maggiore v. Loehbaum was a contest between the contestant and the nominee, who was also voted for in the general election as an independent, and the question was as to the effect of the votes cast on the official ballot, and the votes cast for the nominee as an independent. The constitutionality of the primary act was also involved.
Appellants cite the case of Hall v. Godchaux, 149 La. 733, 90 South. 145, as authority for the proposition that it is not essential to an action of this character that the plaintiff “shall claim to have been nominated.” In the case cited, the contestant claimed, primarily, that he had been nominated and, in the alternative, claimed that, if he had not been nominated, the primary election was null. The cause of the complaint was that the contestee, who had received more than half of the votes polled, was not an actual bona fide resident of the state, and was therefore ineligible. The contestant had received more votes than the two other or remaining candidates together had received. He invoked the rule, which prevails in some jurisdictions, that the elimination of^the votes cast for an ineligible candidate, even when they constitute a majority of all of the votes cast, does not annul the election. The contestant did, therefore, present a serious claim that he had been nominated ;• and the court had to decide whether the claim was well founded. The exact question of law had never been passed upon by this court. We decided that the plaintiff was not entitled to the nomination, because, in consequence of a majority of the votes having been cast for an ineligible candidate, the election was null. We decided, also, that the plaintiff, as one of the defeated candidates, had a right of action to have the nullity of the election pronounced. In the case before us, it is not claimed either that the plaintiff or the intervener was nominated, or that the election was null. On the contrary, each contestant claims that the other has been legally eliminated by virtue of the primary election. *501 The only relief prayed for by either contestant is that there shall be a so-called “second primary” between him and the defendant here. The decision in Hall v. Godchaux is not authority for the proposition that the courts have jurisdiction to grant sueh relief.
It will thus be seen, from the foregoing, that none of the cases cited by appellants’ counsel has any bearing upon, or application to, the issues involved in the instant case.
It is our conclusion,- therefore, that the courts are without jurisdiction of the subject-matter of the controversy herein, and that neither the petition of plaintiff nor the petition of intervention discloses a right or caflse of action.
For the reasons assigned, the judgment appealed from is affirmed, at appellants’ costs.