(115 So. 901)

No. 29154.

STATE ex rel. NUNEZ v. ST. BERNARD PARISH DEMOCRATIC EXECUTIVE COMMITTEE.

In re NUNEZ.

Decree Entered Feb. 24, 1928.    Opinion Filed March 12, 1928.

*(Syllabus by Editorial Staff.)*

1. **Elections** ⬉154(1)—Primary law does not give candidate claiming nomination right to go behind committee's tabulation, except in contest brought against opponent as contestee (Act No. 97 of 1922, §§ 25, 27).

Under Primary Election Law (Act No. 97 of 1922), §§ 25, 27, a candidate claiming nomination has no right to go behind the committee's tabulation as to votes, except in a contest brought against an opponent as contestee.

2. **Elections** ⬉154(9)—Judgment in primary nomination contest, in which parish committee and not candidate affected by contest was made defendant, held void (Act No. 97 of 1922, §§ 25, 27).

Judgment in a proceeding brought by one candidate for office of assessor, seeking to have court declare that he was the nominee at the primary, *held* void, because of Act No. 97 of 1922, §§ 25, 27, where parish democratic committee only, and not the opposing candidate affected by such proceeding and judgment, was made a defendant; contestee being a necessary party.

3. **Elections** ⬉154(12)—Contestee, accused, in proceedings against parish committee, only of primary election fraud, could seek annulment of judgment finding contestant the nominee (Act No. 97 of 1922, §§ 25, 27).

Under Act No. 97 of 1922, §§ 25, 27, contestee, accused, in proceeding against the parish Democratic committee, but in which such contestee was not made defendant, of fraud in primary election, *held* to have standing in court to seek annulment of a judgment rendered in such proceeding finding contestant nominee.

4. **Elections** ⬉154(2)—Mandamus and certiorari proceedings by primary candidate to cancel certificate of nomination and order new election held not "election contest" requiring contest procedure (Act No. 97 of 1922, §§ 25, 27).

Mandamus and certiorari proceedings brought by primary election candidate to have the Democratic parish committee ordered to cancel the certificate of nomination issued to another, and call a new election, *held* not an election contest proceedings so as to necessitate court proceedings, as required by Act No. 97 of 1922, §§ 25, 27, where petitioner made no claim of having been nominated.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Contest.]

5. **Elections** ⬉152—Committee's declaring candidate nominee by adding votes, excluded by alleged fraud held improper, though pursuant to void judgment (Act No. 97 of 1922, §§ 25, 27).

Parish Democratic committee's declaring a candidate to be the nominee for assessor on their adding to votes received by him enough votes to give him a majority, on theory of opponent's fraud in preventing casting of such votes at the primary, such proceeding being pursuant to court judgment in which opponent had not been made a party, *held* improper, under Act No. 97 of 1922, §§ 25, 27.

Mandamus by the State, on the relation of Adam Nunez, to compel the St. Bernard Parish Democratic Executive Committee to annul a certificate issued to the Secretary of State showing another's nomination as candidate for assessor, and to order another election. From judgment dismissing his application, relator brings certiorari. Judgment and proceedings thereunder held void.

Brian & Brian, of New Orleans, for relator.

L. H. Perez, of New Orleans, for respondent.

THOMPSON, J.    At the primary election held in the parish of St. Bernard on January 17, 1928, there were four candidates for the nomination for assessor, to wit: August R. Messa, Adam Nunez, Bruce Nunez, and Sidney I. Serpas. The returns were duly promulgated, and the result of said election certified to the secretary of state by the Democratic executive committee of said parish. The returns, as promulgated and certified, showed that Messa had received 794 votes, Adam Nunez, 721, Bruce Nunez, 102, and Serpas, 64. No one of the candidates having received a

majority of the votes cast, it necessarily followed that, under the mandatory provision of the law, a second primary would have to be held between Messa and Nunez, unless one of them withdrew, or unless the result of said primary was set aside, and one of them declared the nominee in some proceedings authorized by law.

On January 26th Messa applied to the district court of St. Bernard parish for a writ of mandamus to compel the executive committee "to properly promulgate the returns of said election according to the facts and 'figures set forth in the petition."

It was alleged that Messa had received a majority of 247 votes over the combined vote of the other three candidates, and that he was entitled to have said committee to declare him the nominee, and to certify that fact to the secretary of state.

The relator's claim to the nomination was based on the fact that a number of spoiled ballots were counted for Nunez, and that a given number of qualified electors who would have voted for Messa were illegally restrained and prevented from casting their votes for him.

The committee answered the proceeding, denying that relator had received a majority of the votes cast in the first primary, and alleged that a second primary was necessary between the relator and Adam Nunez.

On trial, judgment was rendered commanding the committee to certify the election of the relator Messa as the Democratic nominee for the office of assessor of said parish.

In this judgment it was declared that 32 spoiled ballots were counted for Nunez, which should be deducted from the total given him, as shown by the promulgated returns, and that 124 voters were prevented from casting their votes for Messa by unlawful methods, and that said number of votes should be added to the total vote received by Messa, as shown in the promulgated returns, thus giving Messa a majority of 72 votes over all of his opponents.

The mandamus proceeding was, as before stated, against the executive committee as the sole defendant.

After the judgment was rendered declaring Messa to be the nominee, Nunez applied to the district court for a mandamus to compel the executive committee to cancel and annul the certificate issued to the secretary of state pursuant to the judgment of the court, and to call and provide for a second primary election on the date fixed by law, with the said Messa and Nunez as candidates for the office for which they were candidates in the first primary.

In this application it was alleged that the proceeding and the judgment rendered therein declaring Messa to be the nominee were absolutely null and void, and without any effect, for the reason: (1) That no such proceeding against the said committee was authorized by any law of this state; (2) that the right of relator to be a candidate in a second primary election could not be divested in a proceeding to which he was not a party; (3) that the primary election law specifically requires that relator should have been the sole contestee in such a proceeding; and (4) that the committee was without interest in such a proceeding.

To that proceeding Messa and the committee filed an exception to the jurisdiction of the court over the subject-matter. Further, that there was a misjoinder of parties, and that relator had no interest in the subject-matter complained of.

These exceptions were all sustained, and the relator's application for a mandamus was dismissed.

Thereupon the relator filed in this court the present application, in which he prays that Hon. J. Claude Mereaux, judge of the Twenty-Fifth district court, be ordered to set aside, annul, and avoid the judgment ren-

dered by him in the matter entitled August R. Messa v. St. Bernard Parish Democratic Executive Committee, and that the said judge make peremptory the alternative writ of mandamus, directed to the St. Bernard parish Democratic executive committee, commanding it to withdraw, cancel, and annul the certificate filed by said committee with the secretary of state, and to call and provide for the holding of a second primary for the nomination of a candidate for the office of assessor of said parish.

For return to the rule nisi, the respondent judge and August R. Messa admit that no one received a majority of the votes cast for the office of assessor, as shown by the election returns as promulgated by the committee and certified by said committee to the secretary of state.

They alleged, however, that in a contest by Messa, had contradictorily with the executive committee, the court found that 32 spoiled ballots had been improperly counted for Nunez, and therefore deducted the same from the total of his vote, as declared by the committee.

That the court further found that 124 voters had been prevented from casting their votes, and who declared they would have voted for Messa.

The court therefore added 124 votes to Messa's total vote, as shown by the committee's promulgation, which gave Messa a clear majority of 72 over all of his opponents. And therefore the committee was ordered to certify Messa as the nominee to the secretary of state.

It is further alleged that the said proceedings were regular and legal; that the committee was the proper party defendant; and that Nunez was without interest in the suit.

It is further alleged that, in his application for mandamus, Nunez did not claim the nomination that the court was without jurisdiction to entertain the proceeding, and there-

fore properly dismissed the same under section 27, Act 97 of 1922, and Andrews v. Blackman, 131 La. 355, 59 So. 769; Reid v. Brunot, 153 La. 490, 96 So. 43, and State ex rel. Lyons v. State Central Committee, 115 So. 740,[1] recently decided.

It is provided in section 25 of Act 97 of 1922 that the commissioners of election shall, after the closing of the polls, proceed to canvass and tabulate the vote and to make returns thereof to the chairman of the parish committee, which committee shall immediately tabulate and compile the returns, and certify the results thereof to the secretary.

It is further provided in section 27 that *all* contests shall be made before the courts of the state which are fully vested with the necessary power, authority, and jurisdiction to hear, try, and determine the same.

It is provided further that any candidate for a nomination for any office who *shall claim* to have been nominated, and who shall desire to contest the election, shall present a petition to the court in which the *contestee resides*, which petition shall set forth specifically and in detail the grounds on which the contest is based and the irregularities or frauds of which complaint is made.

This is the only provision to be found in the primary election law which authorizes a contest, and it has been held in the cases referred to, supra, that the only person who can file a contest under the terms of said act is the one who claims to have been nominated. And it has been further held in the cases referred to, and particularly in the Reid Case, that one claiming only that apparent nominee did not receive a majority of legal votes, and that there should be a second primary cannot maintain an election contest.

[1] There is no authority to be found in that act which gives a candidate *who claims the nomination* the right to inquire into and go behind the tabulation and promulgation

---

[1] Ante, p. 531.

of the result of the election by the proper committee, except in a contest brought by said candidate against his opponent as contestee. Such candidate, even though he claims the nomination, cannot proceed alone against the committee promulgating the result of the primary.

In the case of Vidrine v. Eldred, 153 La. 779, 96 So. 566, we held:

"Under the primary law the contestant must bring his action against the contestee, * * * and the contestee is the apparently successful candidate. * * * There is nothing in the law which requires that the committee be made a party to the suit, and, since the committee has no interest in the result, there is no reason why it should be."

In Bailey v. Janvier, 120 La. 893, 45 So. 932, the court said:

"The only person whom the complaining candidate is authorized, or has any reason, to bring into court in such case is the opposing candidate or nominee."

[2] It follows, therefore, that the judgment which declared Messa the nominee, in the proceeding against the parish committee, and to which the next highest candidate, Nunez, was not a party, is ultra vires, null, and void, as well as all other proceedings had under said judgment, or as the result thereof.

[3] It will not do to say that Nunez had no interest in the mandamus proceeding against the committee, and had no standing in court to annul the judgment which declared Messa the nominee.

As we have already said, Nunez was not only interested in the contest of Messa, but under the express provision of the law, he was the *necessary* party defendant in that proceeding. The very law which gave Messa the right to file a contest, based on the claim to the nomination, designated the one, and the only one, against whom and with whom he should make that contest.

It may be also observed in this connection that Messa based his claim to the nomination on the allegation that a sufficient number of voters to have given him the nomination, and who would have voted for him, were prevented from doing so by threats of violence and intimidation.

In other words, the fraud practiced, if there was any, was by law, imputed to Nunez, who was, if the charge be true, the recipient of the benefits thereof.

In such a situation and under such conditions, neither the primary election law, nor any other law, so far as we know, closes the door of the courts against, and denies redress to, a person against whom such grievous charges have been made and sanctioned by a solemn decree of court, and in a proceeding to which he was not made a party.

[4] The proceeding of Nunez in the court below and in this court is not a contest of the primary election in any sense. The relator does not claim to have been nominated, nor does he ask to be declared the nominee. It is true he asks that a second primary be ordered in order that he may participate therein as the next highest candidate, as shown by the returns of the first primary.

His main cause of action, however, is to have the judgment complained of annulled and set aside as being unauthorized and in violation of the law. If he is entitled to this relief, and we think he is, it necessarily follows that a second primary will have to be held.

In so holding, we are not in conflict with the ruling in the Reid Case, nor with that of Lyons v. State Central Committee (La.) 115 So. 740,[1] recently decided.

In the Reid Case, Brunot had received a majority over his two opponents, Reid, who ran second, sought to have the returns, as promulgated, set aside and a second primary ordered between him and Brunot. This court held that the statute had not given him the right to file such a contest, in the absence of any claim made that he had been nominated.

---

[1] Ante, p. 531.

The Lyons Case involved the legal interpretation of the primary election statute, and the question at issue was whether a second primary for state officers was required to be held where there was to be no second primary for Governor because of the withdrawal of the next highest candidate for that office. Lyons, having received the next highest vote for the office of auditor in the first primary, sought, by mandamus, to compel the holding of a second primary. This court approved the ruling in the Reid Case, and entertained jurisdiction for the purpose and to the extent of determining the legal question put at issue, which was whether the governing political authority had properly interpreted the primary election law in declining to order a second primary for state officers other than Governor.

In the case of Dobbins v. McDermott, 155 La. 211, 99 So. 41, this court said:

"The plaintiff claims that the committee is ignoring and refusing to follow the requirements of the statute, and he invokes the aid of the court to enforce what he contends is a correct application of its provisions.

"In these circumstances, we think the courts have the jurisdiction to interpret and enforce the law; otherwise, its obeyance would depend upon the pleasure of the committee."

[5] In the instant case, the lower court and the committee, acting in pursuance of the judgment of that court, have proceeded illegally and in a manner not authorized by law, and have declared Messa the nominee by adding to the votes actually received by him a sufficient number of votes never cast or put in the box to give him a clear majority over all opponents.

Such a method of nominating a candidate is, to say the least, unusual, and cannot be sanctioned by this court.

The decree, heretofore entered, is now repeated.

For the reasons assigned, it is ordered and decreed that the judgment rendered by Hon. J. Claude Mereaux, judge of the Twenty-Fifth district court, in the matter styled August R. Messa v. St. Bernard Parish Democratic Executive Committee, No. 318 on the docket of said court, and all proceedings had under and by virtue of and pursuant to said judgment, be, and the same are, declared null and void, and without legal effect.

It is further ordered that the respondent Messa pay all costs of the lower court and of this court.

———

(115 So. 905)