McCALEB, Justice
(dissenting).
I believe that the plea to the jurisdiction rationae materiae was properly maintained by the district judge. It is~Hornbook law that all elections and matters relating to and affecting them belong to the political department of government and are, therefore, beyond the control of the judicial power “in the absence of special constitutional or statutory authorization”. Reid v. Brunot, 153 La. 490, 96 So. 43, 44, citing State v. Judge of Second Judicial District, 13 La.Ann. 89; State ex rel. Woodruff v. Police Jury, 41 La.Ann. 846, 6 So. 777; State ex rel. Rees v. Foster, 111 La. 1087, 36 So. 200; Darbonne v. Village of Oberlin, 121 La. 641, 46 So. 679 and Roussel v. Dornier, 129 La. 930, 57 So. 272, 41 L.R.A.,N.S., 557.
The case at bar is an election contest brought under the provisions of Section 86 of the Primary Election Law, Act 46 of 1940, now LSA-R.S. 18:364, prescribing that any candidate for the nomination for any office “who claims that but for irregularities or fraud he would have been nominated * * * shall present a petition to the judge of the district court * * The asserted irregularity or fraud is that the contestee, who received an overwhelming majority in the primáry, knowingly represented himself to be a qualified elector when he was not.
I fail to see how this charge, even if true, provides a ground for contest as it appears to me that the fraud and irregularities for which a right of contest is provided by the statute refer exclusively to illegal and fraudulent acts committed in the election and have nothing to do with the qualifications of the contestants or their eligibility to hold the office in the event of election.
It is true that, in Hall v. Godchaux, 149 La. 733, 90 So. 145, the court entertained a suit such as this and annulled the primary election. But that ruling, which was made in the latter part of 1921, was based on the provisions of the Primary Election Law of 1916, which did not prescribe a method for challenging the qualifications of a candidate. However, in the following year, the Legislature adopted a new Primary Law, Act 97 of 1922, containing provisions designed to overcome the ruling in the HallGodchaux case. Those provisions, which were contained in Section 11 of the Act, have been recopied (with certain changes not of importance here) in all of the subsequent primary election laws and are presently incorporated in the LSA-Revised Statutes as R.S. 18:307, which provides, in substance, that any qualified elector or member of any committee calling a primary election may object to the candidacy of any *1035 other person; that the objection shall be in writing and contain in detail the reasons therefor; that it shall be filed with the Chairman or Secretary of the Committee calling the primary within five days after the last day upon which the notification of intention to become a candidate may be filed; that, upon timely objection being filed, the Committee shall convene, hear the evidence and render its opinion within 24 hours after the hearing is closed and that each party may appeal to any court of competent jurisdiction for relief, which hearings, both in the lower court and appellate court, shall be, as far as practicable, prosecuted under the same procedure provided for the contesting of elections.
That this was the plain purpose of the Primary Law of 1922 (and its successor statutes) is succinctly pointed out by this court in an opinion on application for rehearing in the famous “dummy candidate” case, Le Blanc v. Hoffmann, 175 La. 517, 143 So. 393. And, ever since that decision, the courts have uniformly held that all objections to the qualifications of a candidate in a primary election must conform with the provisions of LSA-R.S. 18:307 and that, if they do not, the court is without jurisdiction (or in some cases it is said that the contestant is estopped) to entertain the proceeding. It is unnecessary for me to cite the numerous cases that have made this precise ruling. Suffice it to refer to Farrell v. Orleans Parish Democratic Executive Committee, La.App., 15 So.2d 524 and Courtney v. Singleton, La.App., 27 So.2d 448.
The Singleton case is identical with this one. There, in an election for member of the School Board from the Fifth Ward of St. Helena Parish, the defeated candidate instituted an election contest, such as this one, on the ground that his opponent was not a qualified elector under the Constitution and laws of the State. But the court found that he was estopped from so contending in view of Section 28 of Act 46 of 1940, now LSA-R.S. 18:307, inasmuch as ■he had not made his attack on the qualification of his opponent within the time prescribed by law.
The ' decision in this case, holding the provisions of LSA-R.S. 18:307 unconstitutional on the ground that they offend Sections 4 and 12 of Article 8 of the Constitution, is directly in conflict with the ruling in Reid v. Brunot, supra, and can only be viewed as overruling that landmark case, despite the attempt of the majority to distinguish it. To be specific, the argument was made on behalf of appellants in Reid v. Brunot that the court had jurisdiction of the controversy (Judge Reid was claiming that he was entitled to compete in a second primary because Judge Brunot had not received a majority of the legal votes cast), irrespective of the pxúmary law, by virtue of Section 4 of Article 8 of the Constitution providing that the Legislature shall enact laws to secure fairness in party primary elections, etc., and also by reason *1037 of Section 12 of the same Article (relied on by the majority herein) directing the Legislature to provide for the trial and determination of contested elections of all public officers and that such trial shall be by the courts of law. But the court rejected this contention, together with the additional point that jurisdiction had been conferred under Section 35 of Article 7 of the Constitution, making cases involving the right to office or other civil or political rights cognizable in the district courts, on the ground that these constitutional provisions did not include the question of party nominations which, as held in State ex rel. Rees v. Foster, 111 La. 1087, 36 So. 200 must be determined by the party itself or by certain public officials as provided by statute.
Although I am in accord with the rationale of Reid v. Brunot, it must be admitted that the court attempted a somewhat tenuous distinction between that case and Hall v. Godchaux, supra, by stating that, in the latter, the plaintiff had claimed the nomination. In truth, there was no sound distinction as Hall v. Godchaux is plainly antagonistic in principle to Reid v. Brunot. But, be this as it may, it has been long since settled, as I have pointed out above, that the basis for the ruling in Hall v. Godchaux was removed and set aside by the Legislature in the enactment of Act 97 of 1922 containing special provisions for the challenging of the qualifications of a candidate for party nomination.
The obliteration of the provisions of LSA-R.S. 18:307 by the majority, insofar as constitutional requirements of residence are concerned, is of a far-reaching nature forasmuch as henceforward, no candidate in a party primary is required to file his objections to his opponent’s asserted residential qualifications until after the primary is held. In other words, he may pursue the strategy of the contestant in this case of engaging in the primary and making the alleged lack of his opponent’s residential qualifications a principal issue. Then, if rejected by the voters, he may continue his attack in the courts under the rather fatuous allegation that a fraud has been perpetrated upon the electorate.
It is to be borne in mind that this case involves a contest for a party nomination and not an election to office. If it be that the contestee in this case is ineligible, the people have a remedy. The nomination papers of the contestee may be questioned under the general election law, particularly LSA-R.S. 18:628, or, in the event of his election, the district attorney or attorney general may bring a mandamus proceeding for intrusion into office under Act 102 of 1928, Code of Practice Article 873.1.
I respectfully dissent