SANDERS, Justice
(concurring in part and dissenting in part).
Because of the failure of the voting machine in Precinct 26 of Ward 1, East Baton Rouge Parish, it is impossible to determine which of the two candidates, Collier or Keogh, received the highest number of votes for Representative. For this reason, I concur with the majority in the view that the Democratic Executive Committee is vested with the duty of selecting a nominee from the candidates. LSA-R.S. 18:358, subd. E so provides:
“There shall be no third primary. For any situation not especially provided for herein the committee calling the election shall provide for the selection of a nominee or nominees from the candidates.”
I do not agree, however, that this Court can, or should, enjoin the Democratic Executive Committee from sponsoring a recasting of votes in the deficient precinct. The recasting of votes in a single precinct, as undertaken here, is not a third primary prohibited by law. Rather, it is a device to assist the Committee in the discharge of its heavy responsibility of selecting a nominee. That such a vote will have value to the Committee in the exercise of a sound discretion cannot be questioned. The fundamental principle of all elections is to ascertain the will of the people.
I have found no law which prohibits the Committee from using such a voting device or which authorizes judicial interference with its use. It follows that the Court has no jurisdiction to enjoin the vote. Political issues of this nature arising in party primaries are to be resolved by the party officials free of judicial restraint.
In my opinion, the Court of Appeal correctly concluded not to interfere with the action of the Democratic Executive Committee for East Baton Rouge Parish.
*79 For the reasons assigned, I concur in part and dissent only from that portion of the decree enjoining the recasting of votes in Precinct 26 of Ward 1, East Baton Rouge Parish, as authorized by the Democratic Executive Committee.
REASONS FOR JUDGMENT
FOURNET, Chief Justice.
The exceptions to the jurisdiction, prematurity, no cause of action and misjoinder of parties defendant filed by the respondent Keogh in the lower court, which were referred to the merits by the trial judge and in effect overruled by the Court of Appeal, are, with the omission of the last mentioned exception, seriously reurged here by counsel for respondent, who assert the exceptions are all interrelated and based upon the same legal principles and are properly addressed to the merits of the case; and, relying on the settled jurisprudence of this court, a rule of law universally obtaining as stated in the case of Reid v. Brunot, 153 La. 490, 96 So. 43, “ * * * that all elections and all matters relating to or affecting the same, belong to the political department of the government and are, therefore, beyond the control of the judicial power, in the absence of special constitutional or statutory authorization. * * * ”, contend the relator was without right to a mandamus proceeding under the express provisions of the Revised Statutes because it was the mandatory duty of the Committee to convene and certify the respondent’s name as the fifth nominee, together with the four candidates who had received a clear majority, to the Secretary of State, in accordance with the tabulation and compilation of the commissioners’ return of the votes cast sent to the chairman of the Committee, showing he had received the largest number of votes of the remaining candidates who had not received a majority thereof, R.S. 18:358 (D) [1] ; and furthermore, relator was without right to injunctive relief as. he had an adequate remedy at law if he wished to avail himself of the returns as tabulated by the custodian of the voting machines in accordance with the provisions of R.S. 18:-1193 [2] on the fourth day after the election, which showed relator had received a larger number of votes cast[3] than the respondent, by timely contesting the returns of the commissioners in accordance with R.S. 18:364.
The error in counsel's logic lies in the fact that when the Committee was apprised 295 votes cast in Precinct 26, Ward 1, were not registered because of the faulty adjustment of one machine, and there being no evidence from which a logical inference could be drawn to determine the proper allocation of the votes amongst the ten candidates who participated in the second pri *80 mary, it became the mandatory duty of the Committee under the clear and unambiguous language of the Revised Statutes to certify in addition to the four candidates who received a clear majority therein, the fifth nominee from the two candidates who received the next highest number of votes, R.S. 18:358 (E) [4]. Under this same section the Committee is specifically prohibited from ordering or conducting a third primary. It necessarily follows, therefore, that until the Committee had made its selection, neither the relator nor the respondent had a right to have his name certified as a nominee, and the courts are without authority to make such a selection.
The fallacy of the contention that by virtue of the broad discretion vested in the Committee by the statute, the courts are without authority to interfere with the Committee’s method in aid of making its selection of the fifth nominee is apparent inasmuch as it is the mandatory duty of the Committee to convene within six days after the primary election and to certify the results of its tabulation to the Secretary of State, R.S. 18:355[5], and any candidate is given the right to appeal to the courts for the enforcement of any provision of the election laws of this state, the courts being specially authorized to issue the writ of injunction or any other writ necessary for their enforcement, R.S. 18:381 [6].
SANDERS, J., concurs in part and dissents in part for the reasons previously assigned.
HAMITER, J., concurs in part and dissents in part for the written reasons previously assigned by SANDERS, J.
HAMLIN, J., dissents, being of the opinion that, under the exceptional facts and circumstances in this case, the judgment of the Court of Appeal is correct.

. The provisions of R.S. 18:35S(D) pertinent herein are:
“In a second primary, after the committee has met and proclaimed the result, if it is found that a sufficient number of candidates to fill the offices of the same character have failed to receive a majority of the votes cast for those offices, then, in addition to those candidates receiving a majority, a sufficient number of nominees shall be selected to fill the remaining offices from the candidates receiving the highest vote. * * * ”

. R.S. 18:1193 provides in part:
“A. All voting machines shall remain locked and sealed until the fourth day after the use thereof in an election * * *
“B. Upon opening of the machines * * * In the presence of the candidates or their representatives, the parish custodian shall transcribe the totals, whereupon these totals so transcribed by the parish custodian shall become legal evidence of the number of votes cast for each candidate in said election, and accepted as such in any contest suit which may arise.” (Emphasis added)

.The commissioners return showed that Keogh had received 28,273 votes to Collier’s 28,211, thus giving Keogh a plurality of 62 votes. When the machines were opened, however, it was discovered that several errors had been made in compiling the totals of both candidates, including the failure to count 100 votes cast for Collier, whose final tabulation was increased to 28,291, giving him a plurality of 34 votes over Keogh’s adjusted total of 28,257.

. R.S. 18:358(E) “There shall be no third primary. For any situation not especially provided for herein the committee calling the election shall provide for the selection of a nominee or nominees from the candidates.”

. R.S. 18:355 provides in part: “ * * *
“In all other primary elections the returns shall be tabulated and compiled by the respective committees ordering the primaries and the results thereof certified to the Secretary of State. The chairman of the committee, immediately upon receiving the returns, shall open them and cause them to be tabulated and compiled, and within six days after the primary, the committee ordering it shall convene and the chairman thereof shall submit to it the tabulated statement showing the result of the primary and the original returns received by him. * * * ”

.R.S. 18:381 “Unless otherwise provided in this Part, the courts of this state may issue writs of injunction or mandamus or any other remedial writ to enforce any provisions of this Part. Any candidate may appeal to the courts for the enforcement of any provisions of this Part. All proceedings to enforce the provisions of this Part shall be summary and shall be tried by preference and before any other proceedings.”