(86 South. 479)

No. 24328.

HART v. PICOU.

(Oct. 26, 1920.)

(Syllabus by the Court.)

1. Witnesses ⟨⟩297—Cannot be compelled to give evidence incriminating themselves.

One who violates the law cannot be compelled to give evidence in any case which would

---

[1] Ante, p. 30.

have the effect of subjecting him to a criminal prosecution.

2. Elections ⟨⟩126(5)—Statute requiring numbering of ballots mandatory.

The provision of Act No. 35 of 1916, § 14, requiring numbered detachable slips to form a part of ballots, is mandatory, and the failure to observe it, even by a local printer who prints the ballots on failure of the secretary of state to deliver them, invalidates the election notwithstanding section 17 and 23, as amended by Act No. 210 of 1920, § 4.

3. Elections ⟨⟩126(5)—Candidate participating in election held not estopped to claim illegality.

A candidate for office, who had no knowledge that ballots furnished were not numbered, as required by Act No. 35 of 1916, § 14, until the day of the election, was not estopped to claim the election invalid by failure to decline to participate or to continue as a candidate.

Appeal from Twenty-Eighth Judicial District Court, Parish of St. John the Baptist; F. A. Middleton, Judge.

Action by William B. Hart against Emile A. Picou. Judgment for plaintiff, and defendant appeals. Affirmed.

L. Maurice Reynaud, of Lucy, and Dart, Kernan & Dart, of New Orleans, for appellant.

H. N. Gautier, of New Orleans, and C. A. Buchler, of Gretna, for appellee.

DAWKINS, J. The plaintiff, William B. Hart, and defendant, Emile A. Picou, were candidates for the office of sheriff in the parish of St. John the Baptist, in a primary election held on October 1, 1920, to nominate a representative of the Democratic party to be voted on for that office at a special election ordered by the Governor to fill a vacancy caused by the death of the former incumbent.

The returns as promulgated by the secretary of state showed the defendant to have been nominated by a majority of eight votes. Thereupon plaintiff, within the time provid-

ed by law, contested the election upon several grounds, only one of which we find it necessary to notice in disposing of the case.

There was judgment in favor of plaintiff declaring the entire election void, and defendant has appealed.

### Opinion.

The point raised by the plaintiff, and which we think determinative of the case, is that none of the ballots used in the election conformed substantially to the provisions of section 14 of Act No. 35 of the General Assembly of 1916, commonly known as the Primary Election Law.

The official ballots required to be furnished by the secretary of state did not reach the parish seat until 8:20 o'clock a. m. on October 1, 1920, the day of the election. The last train on which they could have been delivered on September 30, 1920, having arrived, the members of the committee, not being able to communicate with the secretary of state because the telephones were out of order, due to a storm which had just taken place, proceeded to have ballots printed to be used in said election, in compliance, as they thought, with section 17 of Act 35 of 1916 which reads as follows:

"Sec. 17. Be it further enacted, etc. That in case the ballots to be furnished to any voting place in accordance with the provisions of this act, shall fail, for any reason, to be delivered, or in any case after delivery they shall be destroyed or stolen, or should errors or omissions occur in them, it shall be the duty of the chairman to cause other ballots and cards of instructions to be prepared *substantially in the form and to the number of the ballots wanting* and to be furnished, and upon receipt of such other ballots from him, accompanied by a statement under oath, that the same have been so prepared and furnished by him, and that the original ballots have failed to be received or have been destroyed or stolen, or that they contain errors or omissions, the commissioners shall cause the ballots so substituted to be used in lieu of the ballots wanting, as above."

The local printer, who printed the ballots thus substituted, had no means of perforating the same, and his numbering machine had been sent away for repairs, so that it was impossible to perforate the ballots and number the slips to be detached when voting, as required by section 14 of Act 35 of 1916. The ballots were therefore printed without these detachable slips bearing numbers, and *all* ballots used in the election were of this character. They were, by the members of the committee who superintended their preparation, delivered at the courthouse and placed in the ballot boxes, two of which boxes were, on the day of the election, carried to the polls by persons other than deputy sheriffs, and who were political partisans of defendant. All ballots placed in the boxes were accounted for, either as having been used by voters or returned.

It seems to be conceded that no fraud was proven, and we are called upon, therefore, to determine the legal effect of the failure to print and use ballots with numbered and detachable slips as provided by section 14 of Act 35 of 1916. This section, in so far as it bears upon the question here presented, we quote as follows:

"Sec. 14. Be it further enacted, etc., that the primary election ballots used in all primary elections * * * held under the provisions of this act, shall be furnished by the secretary of state, at the expense of the state. * * * All said ballots shall be printed upon white paper, of uniform quality, texture and size, and printed in black ink, and each ballot at the bottom and after the pledge shall contain a perforated slip with its number displayed in large numerals, which said slip shall be numbered from one to one thousand, as may be required. * * *

"The ballot with a slip numbered, as hereinbefore provided, shall be handed to the voters by the commissioners of election for voter to take with him to the polling booth, who, after marking his ballot, shall, before casting his ballot in the box, allow the commissioner of election to detach or remove the slip without defacing or tearing the ballot and without in

any way exposing to view the face of the ballot. As soon as the detached slip is removed the voter then shall cast his ballot into the ballot box, the commissioner throwing the perforated or detached slip in a wastebasket or other receptacle to be destroyed after the closing of the polls. The voter shall always have the right to retain possession of his ballot while the commissioners of the election are removing the perforated numbered slip until he deposits the ballot in the ballot box. * * *

"That in the distribution by the secretary of state or by any other authority of official ballots provided for in this act, the same shall be prepared in packages so that the numbered slips shall be placed in said packages indiscriminately and without regard to numerical order, and it is hereby made the duty of the commissioners in delivering the ballot, with the detachable slips, to voters, to select the ballots from the packages indiscriminately, without regard to number, and the right is given to any commissioner to have the ballots so selected without regard to its numerical order, and to have this provision of the law enforced."

And in section 23 of Act 35 of 1916, as amended by section 4 of Act No. 210 of 1920, it is provided that, in addition to the name of the voter, there shall be written on the list of voters, when he applies for a ballot, the number of the ballot given him for that purpose.

The purpose of these provisions is to make effective one of the main objects of the Primary Election Law, and that is that the voter shall be permitted to cast his ballot secretly, without the possibility of any one else knowing how he voted; the idea being that, in these circumstances, he would come nearer voting his true convictions. Whereas, if it were possible for any one else to know, or have a check upon how he voted, an improper influence might be thereby exercised upon his choice. It was found by experience, and is generally known by those familiar with such matters, that without the slips provided by the section quoted, if one official ballot were obtained as a beginning, any number of votes could be controlled, or the candidates for whom they voted determined, by marking the first ballot so obtained according to the wishes of those so desiring to control the results, and requiring the one to whom this first ballot was given to carry it with him into the polls, so marked, and to bring the unmarked ballot furnished by the commissioners back to the person, or persons, who had given him the first, and in turn that ballot could be similarly used with the next voter, and so on indefinitely; this scheme being commonly known as the "endless chain." But, with the slip attached and numbered, and as now provided under the present law, the commissioners being required to enter the number of the ballot or slip to be detached opposite the voter's name on the official list of those voting, the scheme, above outlined, is made physically impossible, because the slip, under the law, is not detached until the ballot is presented for depositing in the ballot box by the voter, and must correspond with the number on the list.

[1, 2] Considering, therefore, the purpose of this provision of the law, we cannot see how it can be said that it was intended merely as directory, and that the failure to observe it must be accompanied by some proof of fraud or showing of injury to the party complaining. Experience has taught that those who violate the law in such matters cannot be relied upon to confess it, and certainly could not be compelled to give evidence in any case which would have the effect of subjecting them to a criminal prosecution. In our opinion it is not a question of the proof of fraud, but of the possibility of its being committed, that the lawmaker intended to guard against. Our view is that this provision of the law is mandatory, and the failure to observe it, as in the present case, where every ballot cast was of the same character, renders the entire election void, for there was not a single legal ballot cast.

It is argued that because the section 17 of the Act No. 35 of 1916 provides that the ballots substituted under its provisions shall be "prepared substantially in the form," etc. of those to be furnished by the secretary of state, the omissions made in the present instance were not a substantial variance. We cannot concur in this view, for the reasons above given. And what we have thus said is likewise applicable to the contention that the law was substantially complied with in the ballots used, so as not to render them amenable to the following prohibitory clause of section 14 of Act No. 35 of 1916, to wit:

"No primary election ballot shall be used unless the same shall substantially comply with the requirements of this act, and any ballots not in accordance herewith shall be void for all purposes and shall not be received, deposited or counted by any commissioner or commissioners of such primary election."

Defendant's counsel has also cited the jurisprudence of this court to the effect that where there has been a free and honest expression of the will of the voters, the results of an election will not be set aside because irregularities and unsubstantial errors have occurred which could not affect the choice of the people so expressed. However, those were cases in which, notwithstanding the errors and irregularities found, there was a valid election, whereas, in the present case, the illegalities which we have pointed out affect all ballots cast, none of which under the section of the law last quoted can be received or counted for any one, and hence there is nothing to support the contention that either candidate was nominated.

### Plea of Estoppel.

[3] It is further contended that because plaintiff voted in the election and continued his candidacy therein, after discovering the facts complained of without protest, he can-not now be heard to question the result on that score after taking his chance of election.

It appears that the ballots were printed and furnished by the partisans of his opponent (though acting officially), and that he had no knowledge thereof until the day of the election. In these circumstances we do not think that he was called upon to decline to participate or continue as a candidate on such short notice, and to risk the chance of his contention as to the law not being upheld. The only case cited in support of the plea is that of Andrews v. Saucier, 13 La. Ann. 301. In that case the plaintiff sought to contest the election of his opponent on the ground that the law under which the election was held was invalid, and the court held that having sought to avail himself of the law by becoming a candidate under its provisions, he could not be heard to assert its invalidity. On the other hand, the plaintiff here is seeking to avail himself of the provisions of the law, especially made to insure a fair result, and neither he nor any one else could say in advance of the election that the result which the law intended to produce would not be had. However, the provisions with reference to the ballots now under consideration are such that we think a failure to observe them carries a necessary presumption that unfairness has prevailed.

Then, again, the provisions of the law in question are in the nature of a rule of public policy of the state, and we do not think that in these circumstances one can be said to have estopped himself from claiming their benefits by merely participating in the election.

For the reasons assigned, the judgment appealed from is affirmed at the cost of the appellant.