120 So.2d 257

Elmer G. SMITH

v.

**WASHINGTON PARISH DEMOCRATIC COMMITTEE and Dorman A. Crowe.**

No. 45036.

Feb. 15, 1960.

James David McNeill, New Orleans, for appellant.

France W. Watts, Jr., Franklinton, for defendant-appellee.

VIOSCA, Justice.

Plaintiff, Elmer G. Smith, and defendant, Dorman A. Crowe, were opposing candidates for the Democratic nomination for the office of Sheriff of Washington Parish at a second primary election held on January 9, 1960. On the face of the returns promulgated by the Washington Parish Democratic Committee, the defendant, Dorman A. Crowe, received 6680 votes and the plaintiff, Elmer G. Smith, 6544 votes and accordingly defendant was declared the nominee for the office of Sheriff by a majority of 136 votes.

Plaintiff instituted this suit against the defendant and the Washington Parish Democratic Committee contesting the second primary election upon the ground that there were a number of illegal and fraudulent votes cast in the various wards of Washington Parish sufficient to change the result of the election, which illegal and fraudulent votes were cast and recorded under circumstances which would lead to the conclusion that they were cast and recorded for the defendant. Plaintiff alleges that the illegal and fraudulent votes should be subtracted from the total vote of the defendant and the plaintiff adjudged the recipient of the largest number of legal votes cast in the primary election. Plaintiff sets out in detail various alleged irregularities in certain precincts of Ward 4. He prays that there be judgment declaring him to be the nominee of the Democratic Party for the office of Sheriff of Washington Parish, and in the alternative, because of the alleged frauds and irregularities, that the court decree the primary election held on January 9,

1960 to be a nullity, and order a new election called forthwith.

To this petition, defendant filed an exception to the citation and an exception of no cause or right of action. These exceptions were referred to the merits. Defendant answered denying that there was any fraud, denying the illegality of the votes cast, and prayed that plaintiff's suit be dismissed. A supplemental and amending petition was filed by plaintiff, over objection of defendant, setting out alleged irregularities in wards other than the one mentioned in the original petition. After trial on the merits, there was judgment in favor of the defendant rejecting the plaintiff's demands at his cost. From this judgment plaintiff has appealed.

Plaintiff attacks 52 votes as being illegal. In his petitions plaintiff sets out the following grounds of illegality: That in the various precincts of the Parish of Washington, the names of persons who did not personally appear in the polling booth were placed on the poll list and that votes were actually cast through the voting machines at the time the said names were so placed; that persons were allowed to vote without the necessity of signing the precinct register; that numerous persons were allowed to vote, although the permanent precinct register shows that no date was entered by the voter's name to show the date on which he voted as is required by law; that persons were permitted to vote without some commissioner in the precinct signing and certifying the voter's certificate before permitting the voter to vote as required by law; that members of the Republican Party and other persons not Democrats and registered as having no party affiliation were permitted to vote in the Democratic primary election on January 9, 1960; that persons whose registration had been challenged before the election and whose names had been ordered taken from the rolls were, nevertheless, permitted to vote; that absentee votes were permitted to be cast and counted with no entry made in the permanent precinct register as required by law; that in many precincts the total of votes tabulated and counted far exceeded the number of names on the poll list certified by the commissioners as having voted.

In brief filed in this Court plaintiff makes the following tabulation:

"Summary Of Illegal Votes

| "Annex I | Persons not registered | 22 |
|---|---|---|
| "Annex II | Persons shown on the poll list twice | 10 |
| "Annex III | Persons with no entry in the permanent precinct register | 18 |
| "Annex IV(a) | Persons voting absentee whose registration certificate shows also voted in person | 2 |
| "Annex IV(b) | Persons shown on the precinct register as voting, most of whom testified they voted, but who are not listed on the poll list | 29 |
| "Annex V | Persons whose registration certificate shows no date entered for January 9, 1960 and no commissioner's signature | 29 |
| "Annex VI | Persons whose registration certificate shows no date entered for January 9, 1960 | 60 |
| "Annex VII | Persons whose registration certificate shows no commissioner's signature after the voter's signature | 58 |
| "Annex VIII(a) | Persons registered as Republicans or with no party affiliation | 6 |
| "Annex VIII(b) | Persons voting absentee whose registration certificate contains no signature for identification with the absentee affidavit | 1 |
| "Annex VIII(c) | Votes tabulated in excess of the number of voters shown on the poll list | 17 |
| | "TOTAL | 252" |

It is conceded by defendant that twelve votes are illegal and cannot be counted. These comprise six votes of Republicans and persons with no party affiliation, one absentee vote, and five purged persons who voted on their permanent registration certificates. But it is the contention of the defendant that there are not enough illegal votes to change the result of the election.

Although plaintiff in this case alleges that the irregularities complained of occurred as a result of fraud, there is not a scintilla of evidence in this record indicating fraud. The commissioners of election appointed by the Washington Parish Democratic Committee were selected from names submitted by the gubernatorial candidates in accordance with LSA–R.S. 18:357. None of them represented either the plaintiff or the defendant, or had any interest in the outcome of the election. The record shows that practically all of them were reputable housewives who served as a matter of patriotic duty and performed their duties conscientiously and to the best of their ability. Because of the great outpouring of voters on the date of the election and the long line of voters waiting to cast their

votes, it was impossible for the commissioners in all cases to enter immediately on the quadruplicate poll lists the names of all those who voted while at the same time performing their other duties of checking the registration lists and clearing the voting machines. They found it necessary in some cases in order not to delay the voting, to keep one or more accurate copies of the poll lists and thereafter copy the names on the other quadruplicate copies. In doing this some errors were committed and some of the copies of the poll lists were not completed. Likewise in the hurry the commissioners in some instances overlooked inserting the date of the election or signing the certificate after the voter's signature. However, where these errors occurred, the voters in question testified that they did cast their votes on January 9, 1960, that they voted only once, and they identified their signatures on the registration rolls. There is no evidence whatsoever of any instance where any commissioner cast a vote for any voter present or absent, or entered on the poll list the name of any voter who did not appear to vote on election day. Counsel for plaintiff conceded at the end of the trial and in briefs filed in this Court that there was no proof of fraud and that the errors and irregularities complained of were honest mistakes and not fraudulent conduct on the part of the commissioners. The district judge likewise found that there was no fraud.

Counsel for plaintiff in this Court bases his case entirely upon the contention that where the commissioners fail to perform any of their ministerial duties such as entering the date, signing the registration certificate after the voter or filling in all of the poll lists properly, the election must be annulled if the number of votes where these oversights occur exceeds the difference in the vote between the two candidates. That is not the law.

■ In the absence of fraud, mere failure of election officials to perform a ministerial duty will not warrant the setting aside of the election. Duncan v. Vernon Parish School Board, 226 La. 379, 76 So.2d 403 (and the long list of cases cited therein); Lewis v. Democratic Executive Committee of Eunice, 232 La. 732, 95 So.2d 292; Jarreau v. David, La.App., 74 So.2d 218.

The following language from Landry v. Ozenne, 194 La. 853, 873, 195 So. 14, 20, is pertinent here: "The officials charged with the conducting of an election are merely the agents of the electors who participate and the candidates, and whose duty it is to facilitate the electors in the free and fair expression of their will, and, in the absence of specific facts giving rise to fraud, or a denial of that free expression, the Courts should not set at naught the will of the electors as expressed. The failure to have followed each and every

formal direction prescribed for their guidance, unless accompanied with a denial of that free expression by the electorate should not be entertained. (See Andrews v. Blackman, 131 La. 335 (59 So. 769); Heine v. Jefferson Davis Parish Police Jury (172 La. 889) 135 So. 667.)"

Plaintiff, in support of his position, relies upon language in the case of Dowling v. Orleans Parish Democratic Committee, 235 La. 62, 102 So.2d 755, 765 to-wit: "We also find it unnecessary to discuss further the failure of commissioners to sign the precinct register after the voter has placed his signature thereon, and to enter the date of the election in the proper space, other than to say that such gross irregularities cannot be condoned. * * *" Counsel for plaintiff interprets this passage from the Dowling case to mean that such votes are illegal in the eyes of the law even in the absence of fraud sufficient to alter the result of the election. This is not a proper interpretation of that language. In the Dowling case the majority opinion held that sufficient fraud was proved to alter the result of the election.

Counsel for plaintiff has also cited in support of his position State ex rel. Harris v. Breithaupt, 220 La. 1042, 58 So.2d 332; Perez v. Cognevich, 156 La. 331, 100 So. 444, and Hart v. Picou, 147 La. 1017, 86 So. 479. We do not consider those cases pertinent here. In State v. Breithaupt, supra,

where ballots and not voting machines, were used, we held that ballots with ink markings should not be counted as such markings might lead to identification and violate the secrecy of the ballot. There is no violation of secrecy in this case.

In Perez v. Cognivich, supra, where a few of the ballots used did not bear the certificate of the Secretary of State, we pointed out that "whether the five ballots under consideration be counted or not does not change the result." [156 La. 331, 100 So. 448.] We said in dictum that they should not be counted as they were not official ballots as required by law. There is no such issue in this case.

In Hart v. Picou, supra, we annulled the election because none of the ballots used conformed to the mandatory provisions of the law. Because of a storm, the official ballots were not delivered by the Secretary of State. A local printer, who printed substitute ballots, did not include the perforated numbered slips which the law required in order to perserve the secrecy of the ballot. For that reason we annulled the election. That case is likewise not pertinent here because no question of lack of secrecy is involved in this case.

Taking the tabulation as set out in plaintiff's brief in this Court heretofore quoted, when the number of votes attacked as being illegal under categories V, VI, and VII, that is, where there is an absence of

date or signature of a commissioner, are deleted from the total, there remain only 105 votes in contest. Conceding, but not holding, that all of these 105 votes are illegal there are not enough votes to change the result of the election. "It is well-established law in this state, as well as elsewhere, that, to contest an election, not only specific frauds or irregularities must be alleged, but it must also be shown that the frauds or irregularities charged did in fact alter the result." Lafargue v. Galloway, 184 La. 707, 710, 167 So. 197, 198.

In Duncan v. Vernon Parish School Board, supra, we quoted the following from Blanchard v. Iberville Parish School Board, 218 La. 784, 51 So.2d 70, 71:

"In view of the fact that the result of the election under attack would not be changed if all of the irregularities complained of were upheld, it would serve no useful purpose to investigate any of the specific claims asserted by plaintiffs." [226 La. 379, 76 So.2d 404.]

However, a review of the record shows that there were only twelve illegal votes cast in the entire parish, three by Republicans, three by voters with no party affiliation, five by voters whose names had been removed from the registration rolls and one by an absentee who was in the parish on election day, and at that it was not established for whom these twelve votes were cast.

The district judge, therefore, was eminently correct in dismissing plaintiff's suit.

For the reasons assigned, the judgment is affirmed, at plaintiff's cost.