PER CURIAM,
This is an election contest filed pursuant to LSA-R.S. 18:364, alleging that the plaintiff, Mr. Avie Fuselier, was entitled, as a result of a first primary held April 8, 1961, to be certified as Democratic nominee for the office of alderman of the municipality of Mamou in the place of Mr. Roy Bertrand, the defendant-contestee, instead of being forced into a runoff for the position in a second primary scheduled to be held on May 13, 1961.
The sole issue before us on this appeal is whether this election contest became moot upon the printing and distribution of the absentee ballots for the second primary, as the trial court held in sustaining an exception of abatement in reliance upon the recent Supreme Court decision in Downs v. Pharis, 240 La. 580, 124 So.2d 553.
In the cited decision, the Supreme Court reversed this court, a majority of which had held that an election contest did not become moot when the Secretary of State is required to furnish absentee ballots to a clerk of court thirty days in advance of any “primary, special, or general election,” LSA-R.S. 18:1072, and where a majority of this court had in effect agreed with the position of the contestor therein that the right of the overwhelming majority of the voters to have a recount of a contested election outweighed the rights of that minute fraction of the very small percentage of absentee voters who might possibly be inconvenienced by some slight delay in receiving their absentee ballots.
 But the Supreme Court held that we were wrong in our interpretation of the election law, and that the election contest became moot and should be dismissed following the date provided by LSA-R.S. 18:1072 for the mandatory duty to furnish absentee ballots to the clerk of court, which is 30 days in advance of the election in which the contestant seeks to be declared a nominee. As an inferior state court, we are constrained to follow this ruling by our State’s highest tribunal; accordingly, we must affirm the trial court’s ruling dismissing this election contest as' moot.
More fully stated, the facts show that on April 8, 1961, the first primary was held to select Democratic nominees for the offices of the five aldermen of the municipality of Mamou; as a result, the Democratic Executive Committee of Mamou certified four aldermanic candidates as the Democratic nominees for the posts sought, having each a majority of the votes cast for the position.
Roy Bertrand, the defendant-contestee, as fourth highest successful candidate for the office of alderman, was among those certified as nominees. In addition, the municipal Democratic committee also certified Avie Fuselier, the plaintiff-contestor herein, and Louis T. Martel, having the next greatest number of votes, as candidates for the remaining or fifth position as alderman, to be voted upon at a second primary to be held on May 13, as mandatorily required by LSA-R.S. 18:358, which provides that “ * * * the second primary shall be held five weeks from the date of the first primary * * * ” and that “ * * * There shall be no third primary. * * * ” (Italics ours.)
For the same second primary runoff election, the committee certified the names of the two candidates for the office of town marshal who had received the greater number of votes in the first primary.
Mr. Fuselier promptly filed suit to be declared a first primary nominee in the place of Mr. Bertrand, the defendant-contestee, alleging in substance that he, the plaintiff, received enough votes to be certified as fourth highest candidate instead of Bertrand, and that the committee (made defendant also) was without authority to include in Bertrand’s total some fourteen absentee ballots which had been rejected by the precinct commissioners when they initially tabulated the returns before transmitting same to the municipal committee. (It should be added that it is not denied *585 that these absentee ballots were actually-cast, nor is it contended that they do not represent the will of the voters in question. The plaintiff contends only that eleven of them should not be counted because the voters in question were not actually absent from Mamou on the day of the election and that three were not actually domiciled in Mamou for the requisite time before the first primary election.)
It is conceded that at the time of the trial below (April 25), the absentee ballots for the Mamou second primary election of May 13, 1961 had already been furnished by the Secretary of State to the Clerk of Court of Evangeline Parish; that they showed that plaintiff as one of the two contenders for the post of alderman to be selected at said second primary; that they did not show the defendant contestee, Bertrand, as one of these two contenders; and that at least two absentee ballots for the Mamou second primary on May 13 have already been cast.
Under LSA-R.S. 18:362:
“All vacancies among the nominees selected by any political party under the provisions of the Part shall be filled by the committee which has jurisdiction over the calling and ordering of the primary. * * * if for any reason any contest filed in court is not finally decided in the district court in time to print the name of the nominee of the party upon the ballot before the election, the political party committee shall certify the name of the contestee in the suit filed, which name shall be printed upon the ballot as the nominee of the party. No court has jurisdiction to enjoin such action. * * *” (Italics ours.)
Under LSA-R.S. 18:1072, as amended by Act 254 of 1960:
“The Secretary of State shall furnish to the clerk of the district court for each respective parish and to the civil sheriff for the parish of Orleans, at least thirty days prior to any primary, special or general election, printed ballots stamped ‘Absentee Ballot’, in an amount equal to ten percent of the registration, together with the necessary envelopes, certificates and instructions for use in voting as an absentee in the election under this Part.” (Italics ours.)
As the Supreme Court stated in Downs v. Pharis above cited, at 124 So.2d 556-557:
“Initially, it is well to point out that it is the firmly-established jurisprudence that all elections and matters relating to and affecting them belong to the political department of government and are, therefore, ordinarily beyond the control of the judicial power in the absence of special constitutional or statutory authorization. Reid v. Brunot, 153 La. 490, 96 So. 43 and cases there cited.
“Our judicial power in contested election cases emanates from a statute enacted pursuant to Section 12 of Article 8 of our Constitution declaring that ‘The Legislature shall provide by law for the trial and determination of contested elections of all public officers, whether State, district, judicial, parochial, municipal or ward * * * ’. Conformably with this mandate, the Legislature adopted Act 46 of 1940, the provisions of which were incorporated, substantially in their original form, in the Revised Statutes as R.S. 18:281, et seq., ‘ * * * and the procedures therein contained are sui generis’. See State ex rel. Vullo v. Plaquemines Parish Police Jury, 238 La. 328, 115 So.2d 368, our most recent expression on this subject.
“Hence, it is manifest that one contesting an election secures only such rights as are given him by the election laws of the State. Under the clear and express provisions of R.S. 18:362, the *586 contest herein has abated for the statute, more fully quoted above, declares ‘ * * * if for any reason any contest filed in court is not finally decided in the district court in time to print the name of the nominee upon the party ballot before the election, * * * ’ then the name of the contestee in the suit shall be printed on the ballot as the nominee of the party and no court has jurisdiction to enjoin such action.
“The majority view of the Court of Appeal was that the action here did not abate because the ballots had not been printed by the Secretary of State at the time the judge sustained defendant’s motion to dismiss. This view, we think, fails to take into account and give full effect to the mandatory provisions of the Absentee Ballot Law (RS. 18:1072), which is a law in pari mate-ria with RS. 18:362, requiring the Secretary of State to furnish the clerk of the district court printed ballots for absentee voting * * at least thirty days prior to any primary, special or general election, * * * ’.” (Italics ours.)
Although very able counsel for the appellant contends that the ruling of Downs v. Pharis, above cited, should be restricted to a holding that election contests become moot 30 days in advance only of general elections, especially since the effect of a contrary ruling is to deprive one who contests the results of a first primary of any actual right to do so when a second primary is ordered (which must be 35 days after the date of the first primary), we are unable to agree, in view of the quoted language and its holding, that the Supreme Court’s decision can be so distinguished. We say this, specifically recognizing that counsel for the appellant has done all that is reasonably possible to expedite these proceedings, but that nevertheless under the Downs decision such were moot without affording the plaintiff sufficient time to obtain any judicial determination of the legal questions presented by him in this election contest.
It is to be noted that prior to the 1960 legislative amendment of LSA-R.S. 18:1072, the Secretary of State was not required to furnish absentee ballots earlier than 15 (instead of 30) days prior to primary, special and general elections. The regulation of elections addresses itself primarily to the legislative and political departments of government; and, in the absence of legislative provisions therefor, it is simply beyond the judicial power to interfere with elections and their progress.
It is further to be noted that the absentee ballots furnished to the clerk of court in connection with the second primary for alderman also include the candidates for the office of town marshal, and that absentee voting for this latter office (as well as for the one in contest hereof) has already commenced and was in progress at the time of the trial below.
For these reasons, giving full effect to the legislative provisions governing the present first and second primary elections, and in view of the ruling of our Supreme Court in Downs v. Pharis, we must affirm the trial court’s decision sustaining the exception of abatement, holding that the present election contest is moot, and dismissing same at the cost of plaintiff-appellant.
Affirmed.