PER CURIAM.
This is an election contest. The plaintiff appeals from the dismissal of his suit.
The plaintiff was a candidate for the Democratic nomination for the office of Sheriff of Concordia Parish at the first primary election held throughout the State of Louisiana on December 7, 1963. The defendant Cross was certified by the Con-cordia Parish Democratic Executive Committee as having received a majority of the votes cast for the three candidates for sheriff and as therefore entitled to the Democratic nomination for said office. Cross and the parish committee are im-pleaded as defendants in this action.
By this suit, the plaintiff Love alleges various irregularities and fraudulent conduct of the election, mostly pertaining to the use of absentee ballots. Specifically, the plaintiff alleges, inter alia, that at least 48 votes should be deducted from the total received by Cross. The Democratic committee had certified Cross as the nominee by virtue of his having received a majority of 11 votes over the combined votes of his two opponents.
Accordingly, the plaintiff Love, who was second highest of the three candidates, contends by this suit that the parish committee should be required to correct its computation and promulgation of the election returns, and, consequently, to certify instead that no candidate received a majority for sheriff at the first primary. Plaintiff prays that the defendant Cross and the plaintiff Love should be certified as candidates in the run-off election to be held in the second Democratic primary to determine the Democratic nominee for sheriff of Con-cordia Parish. This second primary is to be held January 11, 1964.
In the alternative, the defendant prays that the court set aside the election for sheriff held on December 7, 1963 and order a new primary election on the basis of the general and widespread frauds and irregularities alleged, which prevented a true expression of the will of the voters.
I.
The District Court herein dismissed this election contest on the ground that it was moot, because at the time of hearing the statutory 30 days within which the Secretary of State is mandatorily required to furnish absentee ballots to the clerks of court, LSA-R.S. 18:1072, had already expired. In Downs v. Pharis, 240 La. 580, 124 So.2d 553, the Louisiana Supreme Court held, reversing this court, that this mandatory statutory provision made moot any election contest not decided in advance of this 30-day period.
The Supreme Court relied upon LSA-R.S. 18:362, which provides: “* * * [I]f for any reason any [election] contest filed in court is not finally decided in the district court in time to print the name of the nominee of the party upon the ballot before the election, the political party committee shall certify the name of the con-testee [defendant herein] in the suit filed, which name shall be printed upon the ballot as the nominee of the party. No court has jurisdiction to enjoin such action.” (Italics ours.)
In construing the phrase "in time to print the name of the nominee”, the Supreme Court flatly declared:
“When the statute declares that if, for any reason, the election contest is not finally decided in the district court ‘in time to print the name of the nominee of the party upon the ballot’, it means within the time provided by law and not whether factually the Secretary of State has printed the ballots or has not printed them, either because of a court injunction, failure to observe the *616 mandatory provisions of R.S. 18:1072, or otherwise.”
In the Downs case, as in this, a temporary restraining order had been secured in East Baton Rouge preventing the printing of the ballots, and, as in this case also, the ballots had not been printed. The Supreme Court held that, nevertheless, the election contest became moot just as soon as the Secretary of State became under a mandatory duty to furnish the absentee ballots, even though they had not actually been printed, further stating that “the judge who issued the restraining order was without power or authority to extend that injunction against the Secretary of State to any date' beyond the time (30 days) when the Secretary of State was required by law to furnish the clerk of the district court with the printed ballots, save possibly in an exceptional matter showing fraud or gross wrongdoing * *
In an extremely able brief, able counsel for the plaintiff-contestar argues:
“It is contended that the action is moot because there is now less than thirty days from January 11, 1964, the date of the next election. If this is logical, and if this is the law, we remind your Honors that when the results were promulgated on December 13, 1963, and when plaintiff’s cause of action first came into being, there was less than thirty days between that date and the election in January. Therefore, if the cause of action is moot at this time, it was moot then and in fact never existed.
“The question before your Honors is: Can this possibly be the status of our law. Can this possibly be the intent of the legislature in passing the two acts in question, that is to say, the one that permits a candidate to contest an election, and the other one that requires the Secretary of State to print ballots at least thirty days before the second primary.”
However, the identical question was presented to this court in Fuselier v. Bertrand, La.App. 3 Cir., 129 So.2d 583, where likewise an election contest became moot under similar circumstances because of the short interval of time between the first and second primaries. In that case, we stated:
“The sole issue before us on this appeal is whether this election contest became moot upon the printing and distribution of the absentee ballots for the second primary, as the trial court held in sustaining an exception of abatement in reliance upon the recent' Supreme Court decision in Downs v. Pharis, 240 La. 580, 124 So.2d 553.
“In the cited decision, the Supreme Court reversed this court, a majority of which had held that an election contest did not become moot when the Secretary of State is required to furnish absentee ballots to a clerk of court thirty days in advance of any ‘primary, special, or general election,” LSA-R.S. 18:1072, and where a majority of this court had in effect agreed with the position of the contestar therein that the right of the overwhelming majority of the voters to have a recount of a contested election outweighed the rights of that minute fraction of the very small percentage of absentee voters who might possibly be inconvenienced by some slight delay in receiving their absentee ballots.
“But the Supreme Court held that we were wrong in our interpretation of the election law, and that the election contest become moot and should be dismissed following the date provided by LSA-R.S. 18:1072 for the mandatory duty to furnish absentee ballots to the clerk of court, which is 30 days in advance of the election in which the contestant seeks to be declared a nominee. As an inferior state court, we are constrained to follow this ruling by our State’s highest tribunal; accordingly, we must affirm the trial court’s ruling dismissing this election contest as moot.”
The Supreme Court denied certiorari as to our ruling as to this case on May 9, 1961.
*617 As stated by our brothers of the Fourth Circuit in rejecting similar contentions by the plaintiff-contestor, Zibilich v. Orleans Parish Democratic Executive Committee, La.App., 129 So.2d 860, 863, certiorari denied :
“We have not drawn the judicial veil so tightly around us so as to cause us to fail to recognize the real, practical and equitable characteristics of the foregoing contention; however, it is one which more properly addresses itself to the wisdom of the legislature rather than the judiciary, the very nature of which is its civil function as an interpreter, rather than a creator, of the law. Hence, it is clear that one contesting an election possesses only such rights as are afforded him by the election laws of this State.”
By a special plea of unconstitutionality, counsel for the appellant alleges in the alternative that, if the construction we have adopted of the absentee ballot law is correct, then such statute is unconstitutional as depriving a contestant of the right to successfully attack an election, in violation of Article 8, Section 12, Louisiana Constitution, LSA, which requires the legislature to provide for the trial and determination of contested elections.
This pleading attacking the constitutionality of the statute, however, was not timely filed. The Democratic committee promulgated the returns of the first primary on December 13, 1963. Pursuant to LSA-R.S. 18:364, subd. H, which provides that an election contest suit must be brought within two days after the official promulgation of the election results, this election contest was timely filed on December 14th. The case was fixed for hearing on December 20th, answer was filed by the defendants, and it was at this time and on this date that the plaintiff first filed his pleá of unconstitutionality. This plea was thus filed more than two days after the official promulgation of the election results. Such an additional ground to sustain the election contest suit was, therefore, not timely, since election contests are sui generis and no amendments alleging new matters are countenanced “if they are presented after issue has been joined and after the time permitted by statute for the filing of such suits has passed.” Treadaway v. Plaquemines Parish Democratic Committee, La, App.Orl., 193 So. 609, 613.
At the time the trial court heard this case on December 20th, it was just 21 days prior to the second primary election scheduled to be held on January 11th. Since at this time the Secretary of State was already under a mandatory duty to print and furnish the absentee ballots, this suit was moot under the ruling of thé Supreme Court in Downs v. Pharis, cited above.
II.
The plaintiff, however, points out that the Supreme Court itself had reserved the application of its ruling in Downs v. Pharis to the situation “possibly in, an exceptional matter showing fraud or gross wrongdoing * * *» 124 So.2d 557. The plaintiff further points out that by alternative relief he is seeking to annul the entire first primary election held on December 7th on the ground that the election was “illegally conducted” and “was so replete with fraud and reprehensible misconduct as to taint all absentee ballots”. The plaintiff thus seeks to place himself under the doctrine that an entire election will be declared null “if the Court finds the proven frauds and irregularities are of such a serious nature as to deprive the voters of the free expression of their will”, Dowling v. Orleans Parish Democratic Committee, 235 La. 62, 102 So. 2d 755, 762.
Before allegations or proof of fraud can be used to annul an election, certain limiting principles are also well settled. For instance, “ ‘to contest an election, not only' specific frauds or irregularities must be alleged, but it must also be shown that the frauds or irregularities *618 charged did' in fact alter the result.’ ” Smith v. Washington Parish Democratic Committee, 289 La. 827, 120 So.2d 257, 261. Further, for the court to render such a drastic order as to annul an election, “there must be a clear showing that a course of fraudulent conduct was employed which effectually prevented the electors from expressing their will”, Lewis v. Democratic Executive Committee, 232 La. 732, 95 So. 2d 292, 297; which decision is also authority for the holding that the plaintiff cannot complain of illegal conduct of the election which he could have hut did not protest, nor can he complain of the inclusion of votes in the total received which could have been protested or purged before or at the time of the election, had adequate statutory procedure been followed.
Applying these principles to the allegations of the plaintiff’s petition, we find the following:
The main charge made against the conduct of the election is based upon the alleged fraud in the matter of permitting absentee votes to be cast improperly for the defendant Cross. (Cross received some 211 out of 230 absentee votes, as compared with approximately 50% of the non-absentee total.) It is alleged that these ballots should be subtracted from the total, or that, in any event, their fraudulent casting invalidated the entire first primary election for sheriff.
These allegations include: that certain persons actually non-resident in Concordia Parish are not qualified to vote therein by reason of insufficient residence, secured and were permitted to vote absentee ballots; that unknown persons falsely represented themselves to be certain registered voters and secured absentee ballots in the latter’s name, and fraudulently cast such absentee ballots; that certain persons were assisted contrary to law in making out their absentee ballots by deputy sheriffs employed by the defendant Cross; and that one certain absentee ballot was cast by a registered voter away from the office of the Clerk of Court, contrary to law. The petition further alleges that, although 230 absentee ballots in all were cast for the office of sheriff, yet five of these (whether for the defendant Cross or otherwise is not alleged) consisted of two persons listed twice on the list of registered persons and of three persons who additionally cast votes in person on the day of the election. That is, through error, inadvertence or fraud (it is not actually alleged which), these latter were permitted to vote twice in their own names.
There is no allegation that any of these allegedly improperly cast absentee ballots were protested at the time the commissioners in each voting precinct, at the close of regular balloting and at the close of the polls, removed the absentee ballots from the previously sealed envelopes and counted them in accordance with law, after first checking that the absent voter is a registered elector of the precinct and that he has not been present and voted in person that day. See LSA-R.S. 18:1076. The law requires that it is at this time that the absentee ballots must be challenged for cause by the election officials or watchers or any qualified voter, LSA-R.S. 18:1077, in the same manner as the ballots cast in person at the election. See LSA-R.S. 18:341, 352, 1188. As we recently held in Timberlake v. Lindsey, La.App. 3 Cir., 140 So.2d 406, 409:
“As stated in Bradley v. Neill, 174 La. 702, 141 So. 382, 383:
“ ‘ * * * The Primary Election Law allows the candidates watchers at the polls, and allows the watchers to challenge any voter for cause. * * * And the law also requires that every protested ballot shall have attached to it a memorandum setting forth the name of the voter, the name of the challenger, and the ground of protest.
* * *
“ ‘The purpose of the provision is plainly to permit identification of the ballot, and to prevent an election held according to law being annulled *619 by subsequent inquiry into the manner in which the electors voted, an inquiry necessarily depending upon the testimony of the voters themselves without any opportunity being afforded for successful contradiction. And it is the only method provided by the statute for contesting the legality of the ballots.’ (Emphasis added.)
“Ordinarily voters who are disqualified to vote must be formally challenged at the time they offer to vote; under the settled jurisprudence, in the absence of a failure to challenge in writing according to the statutory procedure the voter’s qualifications to vote in the election at the time he votes, a contestant is barred after the election from attacking the validity of his vote. * * * [Citations omitted].”
It is to be remembered that the absentee voter provisions of the election specifically provide certain safeguards to prevent such abuses as are alleged to have occurred here, by providing full publicity in advance of the election date of the names of those voters who had attempted to vote absentee.
The clerk is required to post in a conspicuous place the names of any electors who have cast absentee ballots, immediately on receipt of the sealed envelope containing the ballot. LSA-R.S. 18:1075. Cf. also LSA-R.S. 18:1073. Applications to vote absentee in person (the only type of absentee ballots involved herein) must be made “not more than nineteen nor less than six days before an election”, LSA-R.S. 18:-1073. The absentee ballot must be executed in secret immediately in the clerk’s office. LSA-R.S. 18:1074.
By six days before the election, then, there is full public notice of the names of all voters who have attempted to avail themselves of the absentee vote privilege. Presumably, this full publicity of such names for six full days in advance of the election is provided in order to enable those prejudiced to discover the very sort of abuse of absentee votes here alleged, in order to permit them full opportunity to challenge the improper casting of invalid absentee ballots at the time the election commissioners of each precinct formally verify as a qualified elector the name of the ab-^ sentee voter on each sealed envelope, before opening same to place the enclosed absentee ballot for counting (if no chai-1 lenge is made to it).
For these reasons, then, the plaintiff’s challenge to these absentee ballots as irregular or invalid cannot be considered by us, since not timely raised by challenge at the time of or before the election.
The remaining alleged irregularities do not require extended comment.
Although precinct registers may not have been furnished as required by law, no protest as to their absence was made by any candidate, nor is there any showing that their absence prejudiced the contestant more than any other candidate so as to warrant the conclusion that the results of the election were changed thereby.
Although it is alleged that two duly qualified and registered voters were not permitted to vote at their respective precincts, because their names were not on the poll list, and that these voters intended to vote for the plaintiff, nevertheless the election law provides a remedy for the qualified elector in such an instance, LSA-R.S. 18:-238(5), which the electors in question did not according to the allegations attempt to avail themselves of.
The most serious allegation of fraud is that four absentee ballots cast for the plaintiff were, after their casting, fraudulently opened and changed so as to reflect a vote for the defendant Cross. Preter-mitting whether these ballots could not have been adequately challenged at the time of the allegation, it is sufficient to state that, even if these four votes were changed to the defendant Cross from the plaintiff Love, the defendant Cross would still have been the victor over both opponents in the first primary election by a net of three *620 votes. As previously noted, an election contest petition does not state a cause of action, in the absence' of allegations which ¡positively show that the irregularities charged did in fact alter the election result. Smith v. Washington Parish Democratic Committee, cited above.

Decree.

For the reasons above assigned, the judgment of the District Court dismissing this election contest suit is affirmed, at the cost of the plaintiff-appellant.
Affirmed.