GULOTTA, Judge.
This is a second primary election contest involving the office of District Attorney for the Parish of Orleans. Plaintiff is seeking to be declared the democratic nominee or, alternatively, is seeking to set aside the results [1] of the election.
Jim Garrison alleges in his petition, as amended, that 2,369 fraudulent votes were cast in precincts by persons who did not appear at the polling booth based upon the fact that names were entered on the poll lists and votes were cast through the voting machine in a corresponding number resulting in more votes being cast than are registered on the precinct register.
He further alleges in his original and supplemental and amended petitions in excess of 10,000 instances of irregularities consisting of incorrect dates or no dates on the registration cards (3,883); no signatures of the commissioners on the precinct cards (3,003); voters who were allowed to vote who did not sign the precinct register (1,025); persons were allowed to vote without providing a sample signature (1,997) ; “alterations and line-outs” on the precinct cards (1,930).
According to Garrison’s petition, all of the commissioners and/or watchers were representing Connick or were supporters of his political faction or sympathetic to his faction and fraudulent votes were cast sur *683 reptitiously; and, accordingly, Connick’s margin of victory (2,221 votes) came as a result of fraud and irregularities. From a judgment maintaining an exception of no cause of action, plaintiff appeals.
We are confronted first with the question of whether supplemental and amended petitions can be considered in determining if a cause of action has been stated. The trial judge concluded in reasons for judgment that only the allegations contained in the original petition can be considered. However, he further reasons that assuming the supplemental and amended petitions were considered, a cause of action is not stated.
The controlling statute is LSA-R.S. 18:364, which provides as follows in setting forth the requirements of the petition.
“ * * * The petition shall set forth specifically in detail the grounds on which the contest is based and the irregularities or frauds of which complaint is made. * * * ”
The original petition fails to state specifically and in detail the fraud and irregularities relied upon to set aside the election. However, our interpretation of the statutes and jurisprudence as reflected by Burch v. McClendon, 123 So.2d 636 (La.App. 1st Cir. 1960), and Dowling v. Orleans Parish Democratic Committee, 235 La. 62, 102 So.2d 755 (1958), permits the filing of a supplemental and amended petition where the amended pleadings particularize or amplify the original allegations.[2]
 True, the statute places stringent requirements on the expeditious filing of election contests;[3] nevertheless, the language of the statute cannot be so strictly construed as to deprive the contesting candidate of an opportunity to obtain specific information and to allege specific fact in detail prior to the date fixed for the hearing,[4] provided those specific allegations contained in the amended pleadings particularize or amplify the original pleading. Applying this interpretation to the instant case, we are of the opinion that the supplemental and amended petitions must be considered in determining if a cause of action has been stated.
We next turn to the consideration of whether the petition, as amended, states a cause of action. As pointed out herein above, the controlling statute (LSA-R.S. 18:364) requires that the allegations of irregularity or fraud must be set forth specifically in detail. The petition, as amended, contains in excess of 10,000 allegations of irregularity and 2,369 allegations of fraud.
We fail to find merit in the plaintiff’s argument that the irregularities complained of constitute the basis for setting aside the election.
In Smith v. Washington Parish Democratic Committee, 239 La. 827, 120 So.2d 257, 260 (1960), the Supreme Court had before it a complaint of irregularities similar to those contained in the original and supplemental petitions in the instant case. The court stated in that case:
“Counsel for plaintiff in this Court bases his case entirely upon the contention that where the commissioners fail to perform any of their ministerial duties such as entering the date, signing the registration certificate after the voter or filling in all of the poll lists properly, the election must be annulled if the number of votes where these oversights occur exceeds the difference in the vote between the two candidates. That is not the law.
“In the absence of fraud, mere failure of election officials to perform a ministerial *684 duty will not warrant the setting aside of the election.”
Accordingly, when we apply the language of the Smith case to the instant one, we conclude that the petition, as amended, does not allege irregularities sufficient to state a cause of action. See also Landry v. Ozenne, 194 La. 853, 195 So. 14 (1940).
However, we are more concerned here with the allegations relating to the 2,369 alleged or fraudulent votes. Plaintiff’s petition, as amended, alleges that persons who did not appear at the polling booth were entered on the poll lists and votes were actually cast through the voting machine in a corresponding number and that more votes were cast than are registered on the precinct register. He further alleges that forged signatures were entered on the precinct register, and a corresponding number of votes were cast on the voting machine though the persons whose names were forged did not appear to cast their vote or sign their names. The petition further states that if such illegal and fraudulent votes were eliminated, the results of the election would have been materially changed, and Garrison would have been nominated.
The requirement as set forth in the statute is that the fraud be specifically alleged in detail. We are squarely confronted with the question of whether the allegations relating to fraud contained in the petition, as amended, meets that requirement. We think not.
While the petition, as amended, particularizes in certain precincts and wards that more votes were cast than there are signatures on the precinct register, the allegations presume fraud resulted in these instances where the discrepancies exist which was either perpetrated by the commissioners or watchers or by others with the approval of the commissioners or watchers. These are conclusions presuming that fraud occurred in 2,369 instances. Some of these discrepancies could have resulted- from commissioner negligence See footnote 1 to opinion of Justice Howard E. McCaleb in the Dowling case, supra, 102 So.2d at page 767. Furthermore, allegations that merely because commissioners and/or watchers were all sympathetic to one candidate cannot serve as a basis of specifying in detail that those irregularities in all of those precincts resulted in votes being cast for one candidate. Particularly is this true where, as in the instant case, there were four second primary elections and the commissioners and watchers could have been designated by any of the runoff candidates. The extra votes might have been cast for some other candidates and not for Connick. Allegations of this nature constitute complaints of a general nature which cannot be permitted under the statute. It cannot be presumed that the commissioners and/or watchers committed fraud. Factual allegations of fraud must be alleged, not conclusions presuming fraud. Plaintiff must allege the persons who perpetrated the fraud and those electors who did not appear at the polls and whose names were placed on the poll list for whom votes were allegedly cast on the machine. If plaintiff knows the names of the persons, he should allege; and he alleges he knows who did not appear at the polls. Fraud cannot be alleged in a vacuum. See Molero v. Rowley, 194 La. 527, 194 So. 7 (1940).
Plaintiff strongly relies on the holding of the Louisiana Supreme Cohrt in Dowling v. Orleans Parish Democratic Committee, supra, in which the court by a majority vote set aside the election results and declared the contesting candidate the party nominee. Garrison calls to our attention the language in the Dowling case which states:
“ * * * Since the election officers themselves, according to the uncontra-dicted testimony, were the only persons in a position to cast the illegal ballots or to permit them to be cast, and since they were supporting O’Hara, it is inconceiv *685 able that the votes would have been cast for a candidate other than the one of their choice. We have therefore concluded that the 17 fraudulent votes were cast for O’Hara and should be deducted from the total vote credited to him, thus leaving plaintiff with a clear majority of the legal votes cast and entitling him to the nomination for the Democratic Party for the office of District Attorney of Orleans Parish. * * * ”
However, it is significant in that case that the court concluded that 17 instances of illegally or fraudulently cast votes were proved to have been committed by the commissioners in one precinct. The vote differential, in that case, between the two candidates was 13. However, here, 2,369 instances of fraud are alleged. With specific reference to the Dowling case, the court in Smith v. Washington Parish Democratic Committee, supra, said, 120 So.2d at page 261:
“Plaintiff, in support of his position, relies upon language in the case of Dowling v. Orleans Parish Democratic Committee, 235 La. 62, 102 So.2d 755, 765 to wit: We also find it unnecessary to discuss further the failure of commissioners to sign the precinct register after the voter has placed his signature thereon, and to enter the date of the election in the proper space, other than to say that such gross irregularities cannot be condoned. * * *’ Counsel for plaintiff interprets this passage from the Dowling case to mean that such votes are illegal in the eyes of the law even in the absence of fraud sufficient to alter the result of the election. This is not a proper interpretation of that language. In the Dowling case the majority opinion held that sufficient fraud was proved to alter the result of the election.”
In Landry v. Ozenne, supra, a case involving the nominee for sheriff, the Supreme Court affirmed the judgment of the trial court maintaining an exception of no cause of action where fraud and irregularity were alleged in that ballots were spoiled.
The court stated on page 18 in that opinion:
“ * * * Certainly, if plaintiff knew of any specific ballots being spoiled for a specific reason, he should have so stated and not rely upon language which would cover every conceivable means of irregularity. * * *”
The Court went on further to say:
“ * * * Such language as plaintiff has used in these charges now being dealt with are, to say the least, speculative, and only give rise to a mere suspicion and ultimately present a matter purely problematical. * * * ”
See also Treadaway v. Plaquemines Parish D. Committee, 193 So. 609 (Orl., La.App.1940); State v. Mills, 191 La. 1, 184 So. 350; Lewis v. Democratic Executive Committee, 232 La. 732, 95 So.2d 292.
While the statute places a heavy burden of alleging and proving irregularities or fraud upon a contesting candidate, nevertheless, the language contained in the statute is clear. The legislature in its wisdom has required specificity in detail.
We conclude that the petition, as amended, does not meet the statutory and jurisprudential requirements since it does not specifically allege in detail the fraud relied upon to set aside the election. The judgment maintaining the exception of no cause of action is affirmed.
Affirmed.

. The total tabulation as promulgated by the Orleans Parish Democratic Executive Committee shows Harry P. Connick to be the Demoeratic nominee by a vote of C4,952 for Connick and 62,731 for Garrison, or a majority of 2,221.

.While it appears that the language concerning supplemental and amended petitions in the Dowling case is dicta, nevertheless, we believe the wording and rationale contained therein are sound.

. LSA-R.S. 18:364 provides that no contest shall be entertained unless brought within two days of promulgation.

. LSA-R.S. 18:364 requires a hearing to be held within five days from the date of filing.